**Darrell Lee BROWN, Petitioner,**

v.

**Richard RISON, Respondent.**

**No. CV87–5550–R–(GHK).**

United States District Court, C.D. California.

Nov. 25, 1987.

Darrell Lee Brown, pro se.

Richard E. Drooyan, Acting U.S. Atty., Robert L. Brosio, Asst. U.S. Atty., Chief, Crim. Div. and David C. Scheper, Asst. U.S. Atty., Los Angeles, Cal., for Richard Rison.

### ORDER ADOPTING MEMORANDUM AND RECOMMENDATION OF UNITED STATES MAGISTRATE

REAL, Chief Judge.

This matter is before the court upon a Petition for Writ of Habeas Corpus.

The court has reviewed the entire record in this matter including all the documents submitted by the parties relating to this petition.

IT IS ORDERED the court adopts the Memorandum and Recommendation heretofore filed by Magistrate King on all issues presented to him in the petition. Magistrate King's Memorandum and Recommendation correctly states the law and is supported by the record in this case.

The Court specifically adopts the Memorandum and Recommendation filed on Nov. 25, 1987 and now instructs the Clerk to enter the recommendations made therein as the Order of this Court.

The Petition for Writ of Habeas Corpus is denied.

### MEMORANDUM AND RECOMMENDATION OF UNITED STATES MAGISTRATE

GEORGE H. KING, United States Magistrate.

Petitioner was ordered to reside in a community treatment center ("CTC") as a condition of pre-trial bail. Thereafter, he was convicted in the United States District Court for the Northern District of California and began serving his sentence at the

Federal Prison Camp in Lompoc, California on July 28, 1986.

On April 20, 1987, the sentencing judge issued an order directing that petitioner be given credit for time spent in the CTC "insofar as this Court has the authority to [do so]." The Bureau of Prisons has taken the position consistent with its Policy Statement 5880.24 [1] that time spent in a CTC as a condition of bail cannot be credited against the prisoner's sentence. Accordingly, it has refused to give petitioner credit for the ten (10) months he spent in the CTC.

On August 21, 1987, petitioner filed this petition for writ of habeas corpus.

### Petitioner's Contention

Petitioner's sole contention is the Bureau of Prisons denied him equal protection of the laws when it failed to grant him credit for the ten (10) months he spent in the CTC.

### Discussion

#### 1. Exhaustion of Administrative Remedies

Petitioner must exhaust his administrative remedies before filing for habeas corpus relief. *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir.1983). The Bureau of Prisons has established a three-tier administrative remedy process. 28 C.F.R. §§ 542.10–.16 (1986). Petitioner admits that he has appealed to and was denied relief by only the first tier in this process, (Petition, p. 4a), but claims that continued efforts at exhaustion would be futile, and would result in irreparable injury.

While exhaustion of administrative remedies is the general rule, this requirement is neither jurisdictional (*Anderson v. Miller*, 772 F.2d 375, 377 (7th Cir.1985) *cert. denied* 475 U.S. 1021, 106 S.Ct. 1210, 89 L.Ed.2d 322 (1986)), nor without exception. Even the court in *Ruviwat* recognized, but did not define, extraordinary circumstances justifying judicial intervention without exhaustion of administrative appeals. *Ruviwat*, 701 F.2d at 845.

In this case, petitioner should be relieved of his obligation to exhaust his administrative remedies. First, in light of Bureau of Prisons Policy Statement 5880.24, appeals to the other two tiers of the administrative process would have been futile. Secondly, petitioner presents a constitutional challenge against an administrative policy. These questions are particularly ill-suited for administrative resolution. *Finnerty v. Cowen*, 508 F.2d 979, 982–83 (2nd Cir.1974); *Green v. Nelson*, 442 F.Supp. 1047, 1052 (D.Conn.1977).

Moreover, reaching the merits of this petition would not contravene the policy reasons for the exhaustion requirement. Since this matter does not turn on factual disputes, this court would not be aided by the development of any factual record in the administrative forum. In light of Policy Statement 5880.24, it is most unlikely that this court's time could be conserved due to the possibility of relief being granted on the administrative level. Finally, since the issue is one of constitutional law, it does not involve any errors occurring during the course of an administrative proceeding which might be corrected by the administrative agency. *See Ruviwat*, 701 F.2d at 845. Accordingly, it is appropriate to reach the merits of the petition.

#### 2. Petitioner's Equal Protection Claim

As a condition of bail pending trial, petitioner was ordered to reside in a CTC. He

---

1. Policy Statement 5880.24(5)b(5) provides in part as follows:

    Time spent in residence in a residential community center (or a community based program located in a Metropolitan Correctional Center or jail) under the provisions of 18 U.S.C. 3146 as a condition of bail or bond, including the "Pretrial Services" program (18 U.S.C. 3152–3154), is not creditable as jail time since the degree of restraint provided by residence in a community center is not suffi-cient restraint to constitute custody within the meaning or intent of 18 U.S.C. 3568. Also, a "highly restrictive" condition of bail or bond, such as requiring the defendant to report daily to the U.S. Marshal, is not considered as time in custody. However, the time spent in a jail type facility (not including a community based program located in a Metropolitan Correctional Center or jail) as a condition of bail or bond is creditable as jail time because of the greater degree of restraint.

did so for 306 days. While there, he was subject to the same rules, regulations and restrictions applicable to post-sentence prisoners.[2] Since post-sentence prisoners are serving their sentence while residing in the CTC, petitioner argues he should receive credit against his sentence for the time he spent in like residence in the CTC.

At the outset, it is important to focus on the precise nature of petitioner's claim. He does not claim that time spent in a CTC constitutes "in custody" time within the meaning of 18 U.S.C. § 3568[3] as a matter of law under all circumstances. If he did, his petition would be frivolous since the law is clear that time spent on bail, despite restrictive conditions, cannot be credited under § 3568.[4] Only actual custodial incarceration constitutes time spent "in custody" within the meaning of § 3568. *Polakoff v. United States*, 489 F.2d 727, 730 (5th Cir.1974) (time spent on "highly restricted" bond not "in custody" within the meaning of § 3568); *see also United States v. Robles*, 563 F.2d 1308, 1309 (9th Cir.1977) *cert. denied* 435 U.S. 925, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978) (time spent on bond with various conditions not "in custody" within the meaning of § 3568); *Sica v. United States*, 454 F.2d 281, 282 (9th Cir.

1971) ("[t]here is no reason for treating time spent on bail as jail time.").

Petitioner's only argument is that since post-sentence prisoners' time in the CTC counts toward their sentence, he should receive credit for his CTC time. His comparison is not with a pre-trial prisoner in a jail institution; it is with a post-sentence prisoner who serves a part of his sentence at the same CTC.

In light of petitioner's contention that he is being treated differently from his post-sentence counterpart, our equal protection analysis involves a two-step inquiry. First, we must determine if petitioner is "similarly situated" with the post-sentence prisoners. If he is not, there is no equal protection issue. If he is, petitioner is denied equal protection of the laws unless there is a rational reason for the distinction. *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979).[5]

### A. The "Similarly Situated" Analysis

Petitioner alleges that he and a post-sentence prisoner are similarly situated because both are subject to the same rules, regulations and restrictions at the CTC.[6]

---

**2.** For purposes of present discussion, post-sentence prisoners are those persons who are in the custody of the Attorney General and who have begun serving their sentences. The time they spend in a CTC occurs immediately prior to their release into the community, and after they have served a period of incarceration. (Return, 8–9) While petitioner is now a post-sentence prisoner, his challenge relates solely to his prior status as a pre-conviction person residing in a CTC as a condition of bail pending trial. Accordingly, throughout our discussion, petitioner will be viewed in his pre-conviction status.

**3.** 18 U.S.C. § 3568 provides in pertinent part as follows:

The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed.

**4.** Unless otherwise indicated, all references to § 3568 are to 18 U.S.C. § 3568.

**5.** While the Fifth Amendment does not contain an equal protection clause, its due process clause forbids the federal government from denying equal protection of the laws. *Vance v. Bradley*, 440 U.S. at 94 n. 1, 99 S.Ct. at 941 n. 1.

**6.** The government claims post-sentence prisoners at the CTC are subject to stricter prohibitions and penalties, including forfeiture of good time and revocation of parole for escape. These alleged differences are inconsequential. Petitioner would have been subject to substantially similar adverse consequences if he had violated the condition of his bond. If he had failed to appear as promised, he could have been imprisoned up to ten (10) years under 18 U.S.C. § 3146. Additionally, if he had violated the conditions of his bond, he could have had his bail revoked, and been ordered detained and prosecuted for contempt of court. 18 U.S.C. § 3148(a).

The government also states that petitioner differs from a post-sentence prisoner because the latter is at the CTC following a period of incarceration. This statement calls attention to 18 U.S.C. § 4082(b), the clear legislative purpose of which this court cannot ignore in this case. See discussion at 1509–10.

Even assuming the factual similarity of the conditions of residence at the CTC, petitioner and a post-sentence prisoner are not similarly situated in the legal sense. While petitioner's time is creditable, if at all, under § 3568, a post-sentence prisoner at the CTC is serving his sentence by virtue of 18 U.S.C. § 4082(b).[7] As such, he is not receiving "credit" for his CTC time within the meaning of § 3568. His time in a CTC counts toward service of his sentence because § 4082[8] permits the Attorney General to place him in such "facility."[9] To be truly similarly situated, the comparison must be between petitioner and another pre-trial CTC resident. But, petitioner does not present that argument here. Because petitioner and a post-sentence prisoner are not similarly situated, he has not been denied equal protection of the laws.

#### B. *The "Rational Reason" Analysis*

Assuming *arguendo* that petitioner and a post-sentence prisoner are similarly situated because both are considered "in custody" within the meaning of § 3568,[10] petitioner is still not entitled to relief since there is a rational reason for the distinction.

The purpose of permitting service of a sentence at a CTC for post-sentence prisoners is to give the Attorney General latitude in facilitating an inmate's re-absorption into the community so as to reduce the likelihood of recidivist conduct. The 1965 amendment to § 4082 adding the word "facility" as a permitted place of confinement and defining it to include a CTC was characterized as an attempt to facilitate the rehabilitation of persons convicted of offenses against the United States. Act of Sept. 10, 1965, Pub.L. 89–176, 79 Stat. 674 (1965). Moreover, the legislative history of this amendment shows that Congress regarded the period between incarceration at an institution and outright release into the community as critically important.

> Testimony before the ad hoc subcommittee and the studies of the National Penitentiaries Subcommittee indicate that the period immediately following release from prison is most critical. It is during this period that all too many offenders get back into trouble as a result of an almost total lack of resources, guidance, employment, and even food and shelter. The provisions of the bill would create an organized means of accomplishing the re-absorption of ex-prisoners into the community, reducing the crime rate, and thereby promoting the public safety.

S.Rep. No. 613, 89th Cong., 1st Sess. 2 (1965), *reprinted in* 1965 U.S.Code Cong. & Admin.News 3076, 3077. Further, Congress also found experience showed the parole violation rate for juvenile and youthful offenders released through a halfway house was not more than 30 percent[11] as opposed to 50 percent for those released

---

7. 18 U.S.C. § 4082(b) provides in pertinent part that "[t]he Attorney General may designate as a place of confinement any available, suitable, and appropriate institution or facility...." 18 U.S.C. § 4082(f) provides that "the term 'facility' shall include a residential community treatment center...."

8. Unless otherwise indicated, all references to § 4082 are to 18 U.S.C. § 4082.

9. In *Johnson v. Smith*, 696 F.2d 1334 (11th Cir. 1983), the court was apparently of the view that § 3568 controls "credits" for all federal prisoners. Id. at 1335. While § 3568 does not distinguish between pre or post conviction "credit," the legislative history shows clearly the purpose of the 1966 amendment was to make specific the Congressional direction to the Attorney General to "give a person credit for time served in custody prior to conviction." H.R.Rep. No. 1541, 89th Cong., 2nd Sess. 4, reprinted in 1966 U.S.Code Cong. & Admin.News 2293, 2294. Cf.

*Shelvy v. Whitfield*, 718 F.2d 441, 443 (D.C.Cir. 1983). It was not meant to determine how time is served after commencement of a sentence, or what "facility" is selected for service of the sentence. Those determinations rest with the Attorney General by virtue of § 4082. Thus, post-sentence prisoners' CTC time is not a "credit" under § 3568. A CTC is just another "facility" which the Attorney General could choose as the place of confinement for service of the sentence. See 18 U.S.C. § 4082(b).

10. The Johnson court expressed this view in its decision. 696 F.2d at 1337.

11. In his letter to the Vice President, the Attorney General estimated this figure to be approximately 20 percent. S.Rep. No. 613, 89th Cong., 1st Sess. 7 (1965), reprinted in 1965 U.S.Code Cong. & Admin.News 3076, 3082.

directly from prison. Accordingly, the goal of this legislation was to enhance the chances of a prisoner's success on parole and to reduce the rate of recidivism.

By permitting a post-sentence prisoner to complete his sentence in a CTC, the Attorney General is carrying out this important Congressional goal. There is, of course, no question this goal is a legitimate governmental interest. There can be little doubt that permitting service of the remainder of a sentence in a CTC where the prisoner can be re-integrated into the community is a rational means of achieving a legitimate goal. In his letter to the Vice President urging approval of the amendments, the Attorney General stated in part as follows:

A 5–year study at the University of Illinois, the results of which were published in 1964, indicated that Federal ex-prisoners who succeed on parole are usually those who find jobs before or soon after their release. During the critical period immediately following release, with little money, few friends, no job, and virtually no other assistance a releasee's likelihood of committing a criminal act is greatest. Through community centers, prerelease assistance in securing employment, shelter until otherwise obtained—possibly until a first pay check is received, and counseling and guidance to avoid further conflict with the law will be available.

S.Rep. No. 613, 89th Cong., 1st Sess. 8 (1965), *reprinted in* 1965 U.S.Code Cong. & Admin.News 3076, 3082.

Since petitioner's time in the CTC came before, not after, his time in close custody, the CTC time did not provide the assistance during the critical and difficult transitional period which Congress deemed necessary and desirable. Because the purpose of § 4082(b) is not served by granting petitioner credit for pre-trial CTC time, the Attorney General may rationally distinguish between petitioner's pre-trial CTC time and a post-sentence prisoner's pre-release CTC time. "[T]he Constitution does not authorize a federal court to interfere in [a] policy decision" of the Attorney General that is rationally related to a legitimate governmental purpose. *See New York City Transit Authority v. Beazer,* 440 U.S. 568, 594, 99 S.Ct. 1355, 1370, 59 L.Ed.2d 587 (1979).

The court recognizes that *Johnson v. Smith,* 696 F.2d 1334 (11th Cir.1983) reached a different result. However, in *Johnson,* the court did not consider the purpose of § 4082(b) in determining whether there is a rational reason for the disparate treatment.[12] Consideration of the underlying purpose of § 4082(b) is crucial to the constitutional analysis in this case.[13] To the extent that *Johnson* was decided after consideration of the purpose of § 4082(b), we respectfully disagree and decline to follow it.[14]

Because there is a rational reason for distinguishing between petitioner and a post-sentence prisoner, petitioner has not been denied equal protection of the laws, and is not entitled to relief.

**12.** In a footnote, the court recognized the government's contention that post-sentence prisoners are in the CTC pursuant to § 4082. 696 F.2d at 1337 n. 1. Being of the view that the purpose of § 3568 is to ensure all time in custody is credited, the court dismissed this proffered distinction in its analysis of the similarity of the situation. However, the court did not revisit this argument in its discussion of whether there is a rational reason for disparate treatment of similarly situated persons. Even assuming that petitioner and a post-sentence prisoner are similarly situated, disparate treatment is constitutionally permissible so long as there is a rational reason for the distinction.

**13.** The court is also aware that *Winiarz v. Scott,* CV86–4149–CBM–(JR) of our district reached a different result based upon the reasoning of

Johnson. Because the legislative purpose of § 4082(b) was not the basis of the *Winiarz* decision, and because it is now pending appeal before the Ninth Circuit, it is not controlling here.

**14.** If petitioner's argument were accepted, pre-trial defendants who are neither in jail nor in a CTC but merely on bail with certain restrictions could argue with equal force that such time should also be credited under § 3568 if post-sentence prisoners on furlough under § 4082 are under no more restraint than the conditions of their bail. This situation demonstrates just how far afield from § 3568's actual custody requirement we would be forced to go if we fail to recognize the qualitatively different reasons for placement in a CTC, under § 4082(b).

*Conclusion*

Upon careful analysis of the purpose of the statutes in issue in this case, and for the reasons set forth above, the Magistrate recommends that the court issue an order (1) dismissing this petition and action on the merits, and (2) approving and adopting this Memorandum and Recommendation.