**Darrell Lee BROWN,
Petitioner–Appellant,**

v.

**Richard H. RISON, Warden, et al.,
Respondent–Appellee.**

No. 88–5535.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 9, 1989.

Decided Jan. 23, 1990.

Charles D. Weisselberg, William J. Genego, Tracy Dressner, Law Student, Post–

Conviction Justice Project, University of Southern California Law Center, Los Angeles, Cal., for petitioner-appellant.

David C. Scheper, Asst. U.S. Atty., Los Angeles, Cal., for respondent-appellee.

Before WALLACE, CANBY and REINHARDT, Circuit Judges.

CANBY, Circuit Judge:

Darrell L. Brown appeals the dismissal of his petition for a writ of habeas corpus. 673 F.Supp. 1505. He contends that the federal Bureau of Prisons erroneously refused to credit his sentence for time spent in custody of a community treatment center prior to his sentencing. We reverse.

## BACKGROUND AND PROCEDURAL HISTORY

Darrell L. Brown was arrested on charges of conspiracy to distribute cocaine and possession with intent to distribute cocaine, 21 U.S.C. §§ 841 & 846, on September 10, 1985. After spending 15 days in the county jail, Brown was released, on bond, to the custody of Eclectic Communications, Inc., a San Francisco community treatment center. As a condition of his release, the court ordered him to reside at the center, and he was required to be present at the center from 7 p.m. to 5 a.m. every day, without outside contact. In addition, he was ordered to follow all the rules and regulations of the center, including drug testing. He was also required to maintain his employment, and travel was restricted to a three county area.

Brown was sentenced on July 28, 1986, after spending 306 days at the center. The Bureau of Prisons credited his sentence with the 15 days he spent in county jail, but did not credit his sentence with the time spent at the community treatment center. Brown is scheduled for mandatory release on June 1, 1990. He has made several attempts to receive credit for the 306 days spent at the center.

In April, 1987, Brown filed a motion with the sentencing court requesting sentence credit for the time served at the center. The court stated that "insofar as this Court has the authority to grant defendant's motion, it wishes to do so," and ordered that Brown receive credit for the 306 days spent in custody of the center. The Bureau refused to credit his sentence.

On June 7, 1987, Brown filed an "Informal Resolution" request with his correctional counselor. The counselor explained to Brown that the sentencing court did not have the authority to credit his sentence, and that under the Bureau's Program Statement No. 5880.20, time spent at a community treatment sentence was not time spent in custody for purposes of sentence credit. The counselor advised Brown that if he was not satisfied with this response, he should follow the Bureau's administrative procedures.

The Bureau of Prisons has established a three-step procedure for formal review of inmate complaints relating to any aspect of imprisonment. See 28 C.F.R. §§ 542.10— 542.16 (1987). Each step has time deadlines. First, the inmate must attempt to resolve the problem through the warden, by filing a form BP–9. If the inmate is not satisfied with the warden's response he may file form BP–10 with the Bureau's Regional Director. The inmate may subsequently appeal to the Bureau General Counsel by filing form BP–11.

On June 9, 1987, Brown filed a form BP–9 with the warden. On June 19, 1987, the warden responded in the same manner as the correctional counselor, stating that Bureau Program Statement No. 5880.24 controlled sentence credit, and under those guidelines Brown could not receive sentence credit. He stated that a copy of Brown's order from the sentencing judge, ordering sentence credit for the 306 days, had been forwarded to the Bureau's General Counsel. He also explained that the Bureau was pursuing a court appeal of the issues Brown had raised. Brown did not pursue the second and third steps of the administrative procedure. Instead, he filed this petition for a writ of habeas corpus,

pro se, in August, 1987. The district court dismissed his petition on the merits. Brown now appeals.

## DISCUSSION

### A. JURISDICTION; EXHAUSTION OF ADMINISTRATIVE REMEDIES

■ We must address a threshold jurisdictional issue before we turn to the merits. Brown's failure completely to exhaust the Bureau's three-part grievance procedure does not divest us of jurisdiction. The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement. *See Chua Han Mow v. United States,* 730 F.2d 1308, 1313 (9th Cir.1984), *cert. denied,* 470 U.S. 1031, 105 S.Ct. 1403, 84 L.Ed.2d 790 (1985); *Montgomery v. Rumsfeld,* 572 F.2d 250, 252 (9th Cir.1978). Because exhaustion is not required by statute, it is not jurisdictional. *Morrison–Knudsen Co., Inc. v. CHG Int'l, Inc.,* 811 F.2d 1209, 1223 (9th Cir.1987), *cert. dismissed,* — U.S. ——, 109 S.Ct. 358, 102 L.Ed.2d 349 (1988); *Montgomery,* 572 F.2d at 252. *Accord Harris v. Martin,* 792 F.2d 52, 54 n. 2 (3d Cir.1986) (court reached the merits despite petitioner's failure to exhaust his administrative remedies, implying that the exhaustion requirement is not jurisdictional); *Jackson v. Carlson,* 707 F.2d 943, 949 (7th Cir.), *cert. denied,* 464 U.S. 861, 104 S.Ct. 189, 78 L.Ed.2d 167 (1983).

■ Where exhaustion of administrative remedies is not jurisdictional, the district court must determine whether to excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court. Because the government did not cross appeal on any grounds, and did not otherwise discuss this issue in its brief or argument, we need not review the district court's finding that exhaustion was excused in this case. *See Miller v. Fairchild Ind., Inc.,* 797 F.2d 727, 738 (9th Cir.1986).

### B. INTERPRETATION OF 18 U.S.C. § 3568

Brown contends he should receive credit for the time he spent at the community treatment center because he was then in "custody" for purposes of 18 U.S.C. § 3568: [1]

> The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed.

The statute does not define the term custody. The legislative history does not provide much guidance on whether specific types of detention constitute custody. The Bureau's position is that residence in a community treatment center does not meet the "custody" requirement of 18 U.S.C. § 3568. The Bureau of Prisons, as the administering agency, has the authority to interpret the statute, and did so in its Program Statement No. 5880.24:

> "In custody" is defined, for purposes of this program statement, as *physical* incarceration in a jail-type institution or facility ...
>
> Time spent in residence in a *residential community center* ... under the provisions of 18 U.S.C. § 3146 as a condition of bail or bond, including the "Pretrial Services" program (18 U.S.C. §§ 3152–3154), is not creditable as jail time since the degree of restraint provided by residence in a community center is not sufficient restraint to constitute custody within the meaning or intent of 18 U.S.C. § 3568.

■ We recognize that we must accord substantial deference to an interpretation of section 3568 by the agency charged with its administration, and must accept that interpretation if it is a reasonable one. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). We also recognize that the term "custody" may vary in meaning when used in different contexts. *See Ramsey v. Brennan,* 878

---

1. 19 U.S.C. § 3568 has been repealed, but was in effect when Brown was sentenced. *See* Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, §§ 212; 235, 98 Stat. 1976, 1987; 2031 (1984).

F.2d 995, 996 (7th Cir.1989). But for purposes of section 3568, we cannot accept as reasonable a definition of "custody" that excludes enforced residence under conditions approaching those of incarceration; to do so would be contrary to the considerations of fairness that must have underlain Congress's provision of credit for time served.

"To a normal English speaker, even to a legal English speaker, being forced to live in a halfway house is to be held in 'custody'." *Ramsey*, 878 F.2d at 996. Having so observed, the Seventh Circuit nevertheless deferred to the Bureau of Prisons, noting both the "chameleon" nature of the term "custody" and the judgment involved in its application. *Id.* We understand both considerations, but reject them. The "ordinary and obvious meaning of [a] phrase is not to be lightly discounted." *INS v. Cardoza–Fonseca*, 480 U.S. 421, 431, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1986). More important, however, is the fact that the conditions of Brown's confinement to the treatment center fall convincingly within both the plain meaning and the obvious intent of "custody" as it is used in section 3568.

During his stay at the treatment center, Brown was required to spend each evening and night, from 7 p.m. to 5 a.m., at the center, without outside contact. He was subject to all of the center's regulations. In addition, he had to maintain his employment, restrict his travel, and be subject to drug testing. The center's duty of supervision was established by its contract with Pretrial Services; the center was required to report any violations of Brown's release conditions to the United States Marshal. Brown was subject to this regime for 306 days prior to his sentencing.[2]

We conclude that it is not reasonable to rule, as the Bureau of Prisons has, that Brown's 306 days of enforced and supervised residence were not "days spent in custody in connection with the offense or acts for which sentence was imposed." 18 U.S.C. § 3568. The conditions of restriction imposed upon Brown during those days were simply too close to incarceration to permit a distinction for purposes of credit against his sentence. Indeed, the Eleventh Circuit has held that it violated equal protection to deny credit to pretrial residents of treatment centers when sentenced prisoners similarly situated were receiving credit for serving part of their terms in such centers. *Johnson v. Smith*, 696 F.2d 1334 (11th Cir.1983). We express no opinion on this equal protection question,[3] for we need not reach it. It is enough for our purposes that the conditions of Brown's confinement to the center deprived him of his liberty to such a high degree that he must be considered to have been in custody for purposes of credit under Section 3568. The restraints on Brown cannot be compared to the usual restrictions imposed on a prisoner released on bail, which do not amount to "custody." *Ortega v. United States*, 510 F.2d 412, 413 (10th Cir.1975) (per curiam). Brown was subject to 24–hour supervision by the center, which was acting as an agent of the criminal justice system, and he was physically incarcerated there for a substantial part of each day for nearly a year. The restraints on his liberty were sufficient to constitute custody for purposes of section 3568. The Bureau's interpretation to the contrary is unreasonable.

We reverse and remand to the district court with instructions to grant the writ.

REVERSED AND REMANDED.

---

**2.** The restrictions upon Brown appear to have been substantially more severe than those imposed on the accused in *United States v. Smith*, 869 F.2d 835 (5th Cir.1989), in which the Fifth Circuit denied credit for pretrial time spent in a halfway house. In *Smith*, the accused was required to undergo urinalysis twice a week, call his parole officer once a week, and remain within the Northern District of Texas. *Id.* at 837.

**3.** The government urges, as it failed to do in timely fashion in *Johnson v. Smith*, 696 F.2d at 1338, that pretrial residents and sentenced prisoners in treatment centers are not similarly situated, and that there is a rational basis for treating them differently. *See also Ramsey*, 878 F.2d at 997.

WALLACE, Circuit Judge, concurring in part and dissenting in part:

I concur in part A of the majority opinion. Because I find the Bureau of Prisons's interpretation of 18 U.S.C. § 3568 to be reasonable, I dissent from part B and from the judgment.

The statute does not contain an explicit definition of the disputed phrase "in custody." Using a dictionary definition, Brown's time in the rehabilitation center might or might not be said to be "in custody." In some respects, the conditions of his residence at the center imposed substantial restrictions on his freedom: Brown was required to be present, without outside contact, from 7 p.m. to 5 a.m.; he could not travel beyond a three-county area; he had to maintain a job and undergo regular drug testing. On the other hand, his position hardly resembled that of someone in jail: he was restricted to the center only at night, and could move freely (subject to the three-county limitation) without oversight during the day. I do not think that the clear language of the statute compels a resolution either way.

The legislative history is similarly unhelpful. The relevant phrase was inserted in the statute as part of the Bail Reform Act of 1966. The stated intent was to correct the inequity arising when a person who could not make bail spent a longer time in jail (before and after conviction) than a person who could qualify for bail, even though the two received an identical sentence for an identical offense. *See* H.R. Rep. No. 2058, 86th Cong., 2d Sess. 1–2, *reprinted in* 1960 U.S.Code Cong. & Admin. News 3288, 3288–90; H.R.Rep. No. 1541, 89th Cong., 2d Sess. 4, 16, *reprinted in* 1966 U.S.Code Cong. & Admin.News 2293, 2294, 2306. It thus appears that Congress was drawing a line between those out on bail and those still "in custody"— however "custody" is defined. Congress probably did not contemplate the situation of a person such as Brown, who was out on bail but nevertheless subject to significant restrictions on his freedom.

When the text and the legislative history of a statute are unclear upon a particular point, we grant "great deference to the interpretation given the statute by the officers or agency charged with its administration." *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) (*Udall*). " 'To sustain [an agency's] application of [an ambiguous] statutory term, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings.' " *Id., quoting Unemployment Commission v. Aragon*, 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946). Our sole inquiry is whether the agency's construction of the disputed term is a "reasonable one." *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 844–45, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984).

The Bureau of Prisons concluded that time spent in rehabilitation centers before trial "is not creditable as jail time since the degree of restraint provided by residence in a community center is not sufficient restraint to constitute custody within the meaning or intent of 18 USC 3568." Bureau of Prisons Program Statement MISB No. 5880.24 § 5(b)(5) (September 5, 1979). The Bureau relied upon judicial authority, from this circuit and elsewhere, establishing that time spent on bail—even with significant restrictions—does not constitute time spent in custody for purposes of jail credit. In *United States v. Robles*, 563 F.2d 1308, 1309 (9th Cir.1977), *cert. denied*, 435 U.S. 925, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978), Robles was placed on bail with restrictions which required him to obey all laws and court orders, remain within the jurisdiction unless the court granted permission to travel, and keep his attorney informed about his address and employment. We held that such restriction did not place Robles "in custody" for purposes of section 3568. *Id.; see also Pokaloff v. United States*, 489 F.2d 727, 730 (5th Cir. 1974) (time spent on "highly restricted bond" does not meet section 3568 custody requirement); *United States v. Peterson*, 507 F.2d 1191, 1192 (D.C.Cir.1974) (custody for section 3568 purposes "means detention or imprisonment in a place of confinement").

**538**

The reasonableness of the Bureau's interpretation of the word "custody" in section 3568 has previously been examined by two circuits. Both courts upheld the Bureau's determination. *Ramsey v. Brennan*, 878 F.2d 995, 996 (7th Cir.1989) (citing our decision in *Robles* ); *United States v. Smith*, 869 F.2d 835, 837 (5th Cir.1989). No court has ever found the Bureau's position unreasonable. I do not believe we should do so and create a circuit conflict.

Brown's residence at the center, while imposing significant restrictions, was a condition of his bail. The restraint upon his freedom was substantially less than it would have been had he remained in jail. It might well be reasonable to treat the rehabilitation center as a place of confinement. However, I cannot say that it was unreasonable not to do so, and thus to deny Brown jail credit. We should not overturn an agency determination when the agency selects one of several competing reasonable interpretations. *Udall*, 380 U.S. at 16, 85 S.Ct. at 801. I would affirm the ruling of the district court.