**UNITED STATES of America, Appellee,**

v.

**Michael E. WICKMAN, Appellant.**

**No. 90–2958.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 6, 1992.

Decided Jan. 31, 1992.

Glen Shapior, Omaha, Neb., argued (James Schaefer, on brief), for appellant.

Joseph Wilson, Dept. of Justice, Washington, D.C., argued (Thomas Thalken, Asst. U.S. Atty., Omaha, Neb., on brief), for appellee.

Before LAY, Chief Judge,[*] McMILLIAN, ARNOLD,[**] JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, and HANSEN, Circuit Judges, *en banc.*

PER CURIAM.

Michael Wickman appeals the district court's[1] refusal to credit the 214 days that Wickman spent under pre-trial house arrest against the twenty seven month sentence he received after pleading guilty to one count of wire fraud. We affirm.

When originally submitted to a panel of this court, Wickman's appeal presented two issues: whether the district court in sentencing Wickman had concurrent jurisdic-

---

[*] The Honorable Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

[**] The Honorable Richard S. Arnold became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992.

1. THE HONORABLE LYLE E. STROM, Chief Judge of the United States District Court for the District of Nebraska.

tion with the U.S. Bureau of Prisons to determine this sentence credit issue, and if so, whether Wickman's period of house arrest was "time he has spent in official detention" for which he "shall be given credit" under 18 U.S.C. § 3585(b). The district court held that the Bureau of Prisons has exclusive jurisdiction to determine sentence credit issues and therefore did not reach the "official detention" question.

Following submission to the panel, this appeal was resubmitted to the court en banc for consideration along with other cases raising both jurisdiction and detention issues. The Supreme Court then granted certiorari in a case presenting the jurisdiction question, *United States v. Wilson*, 916 F.2d 1115 (6th Cir.1990), *cert. granted*, — U.S. —, 112 S.Ct. 48, 116 L.Ed.2d 26 (1991), a circumstance that is likely to delay this court's final decisions in the pending en banc cases that turn on that issue. Wickman then advised the court that he would be eligible for release in February 1992 if successful in this appeal and therefore requested prompt disposition. In response, the government confirmed that the appeal would become moot if not promptly resolved and advised that Wickman has now fully (and unsuccessfully) exhausted his administrative remedies with the Bureau of Prisons. Thus, the government does not oppose our now reaching the merits of the "official detention" question.

Because of these time considerations, the court en banc heard oral argument in this case on January 6, 1992, along with *Moreland v. United States*, 932 F.2d 690 (8th Cir.1991), another case that involves only detention issues. After carefully considering the briefs and arguments of the parties, and the views expressed in Chief Judge Lay's dissenting opinion, we have concluded that the house arrest restrictions that were placed upon Wickman as conditions of his pre-trial release did not constitute "official detention" within the meaning of § 3585(b). *See Villaume v. United States Department of Justice*, 804 F.2d 498 (8th Cir.1986), *cert. denied* 481 U.S. 1022, 107 S.Ct. 1908, 95 L.Ed.2d 514 (1987). Therefore, he is not entitled, as a matter of law, to sentence credit for the time spent under those restrictions.

The judgment of the district court is affirmed.

LAY, Chief Judge, with whom McMILLIAN, Circuit Judge, joins, dissenting.

I am well aware that near unanimous authority holds that an individual who is confined to house arrest as a condition of his pretrial release is not under "official detention" pursuant to Title 18 U.S.C. § 3585(b).[1] When an overwhelming number of distinguished judges and colleagues hold such a view, it makes one wonder whether a contrary view is reasonable to project. But in this case, where a fundamental question of individual liberty is at issue, I believe my view must be stated.

Here, we are dealing with a basic question of what is "official detention." This is a legislative term and regardless of our individual predilections, we must adhere to the intention of Congress in construing such a term. However, the legislative history of section 3585(b) (formerly section 3568) provides little assistance. The Government argues that the Bureau of Prisons (BOP) has interpreted the statute to allow sentence credit only if the defendant is detained in a jail-type institution or is under the custody of the Attorney General. *See* BOP Program Statement No. 5880.24(5)(b)(5) (defining the "in custody" requirement of former section 3568 as

---

1. *See United States v. Insley*, 927 F.2d 185, 186–87 (4th Cir.1991) (appeal bond partially restricting defendant to her parent's house not "official detention"); *Ramsey v. Brennan*, 878 F.2d 995, 996 (7th Cir.1989) (no sentence credit allowed for time spent in a halfway house); *United States v. Woods*, 888 F.2d 653, 655 (10th Cir. 1989) ("official detention" means "imprisonment in a place of confinement, not stipulations or conditions imposed upon a person not subject to full physical incarceration") *cert. denied*, 494 U.S. 1006, 110 S.Ct. 1301, 108 L.Ed.2d 478 (1990); *Villaume v. United States Dep't of Justice*, 804 F.2d 498, 499 (8th Cir.1986) (the "custody" contemplated by section 3568(b) relates to "actual custodial incarceration"), *cert. denied*, 481 U.S. 1022, 107 S.Ct. 1908, 95 L.Ed.2d 514 (1987).

physical incarceration in a jail-type institution or facility). That is certainly a reasonable interpretation, but nothing within the legislative history states such a view. If anything, the legislative history of section 3585(b) indicates congressional intent to broaden the class of defendants eligible for sentencing credit due to alternative forms of pretrial detention.[2] I certainly acknowledge our duty to defer to administrative agencies' interpretations of statutes, but when an interpretation runs contrary to the expressed language of the statute such a view does not deserve consideration. *See Brown v. Rison*, 895 F.2d 533, 536 (9th Cir.1990) (deference to the BOP's Program Statement is not necessary where the agency's position is unreasonable and "contrary to the considerations of fairness that must have underlain Congress's [sic] provision of credit for time served"). In the present case, the Government argues since Wickman was not placed in the Attorney General's custody, but was conditionally released under the Bail Reform Act, 18 U.S.C. § 3142(c) (1988), Wickman may not therefore be held to have been in "official detention." If true, the government's view of official detention is not relevant since Wickman was not in the Attorney General's custody. He was, in fact, confined pursuant to the pretrial detention order of the court, and was therefore in the court's custody. Furthermore, though termed a "conditional release," the legislative history of section 3142(c) does not indicate that the objective of a "conditional release" is any different than that of detention. Both methods are employed to protect communities by reducing the rate of pretrial recidi-

vism. *See* 1984 U.S.Code Cong. and Admin.News 3182, 3188–89.

I submit the fundamental purpose of section 3585(b) requires a different conclusion than that reached by the majority. The words "official detention" do not imply that a pretrial defendant must be detained in a building run by the state or federal government or that the defendant must be in the Attorney General's custody. Certainly, when a judge utilizes an alternative pretrial sanction requiring some sort of confinement, there is an *official act.* The judge's order is a government act requiring compliance. Failure by the prisoner to comply with the judge's order could result in further criminal charges and sanctions. There should be no question that confining an individual to his home is a form of "detention." Nothing in that word implies or requires that the person be in a prison, in a jail, or in a halfway house; it requires only that the individual be detained. *See* Webster's Third New International Unabridged Dictionary (1986) (detention is the "period of temporary custody, prior to disposition by a court").

It seems that in mandating credit for official pretrial detention, Congress intended to equate "official detention" with the loss of a person's liberty. *See Brown*, 895 F.2d at 536 ("It is enough for our purposes that the conditions of Brown's confinement to the center deprived him of his liberty to such a high degree that he must be considered to have been in custody for purposes of credit under Section 3568."). Liberty interests have taken on many different meanings under the law. Basic to anyone's concept of liberty is the freedom to be at large in society and to enjoy the privileges

---

**2.** Though the legislative history provides no definition of the term "official custody," one can infer through the history of amendments to section 3585(b) that Congress' intent has been to expand the methods of pretrial "custody" or "detention" for which a defendant should receive sentencing credit. In 1932, the original version of section 3585(b) made no mention of sentencing credit for pretrial detention. 47 Stat. 381 (1932). Congress amended that statute in 1960 to provide credit for pretrial "custodial" detention only *where the defendant's offense required that a mandatory minimum sentence be imposed and custody resulted from defendant's*

*inability to make bail.* Pub.L. No. 86–691 § 1(a), 74 Stat. 738 (1960). In 1966, Congress mandated sentencing credit for pretrial custody *for all sentenced prisoners.* Pub.L. No. 89–465, 80 Stat. 217 (1966). Finally, in 1984, Congress changed "custody" to "official detention," without intending to change the meaning of the statute. *See* 1984 U.S.Code Cong. & Admin.News 3182, 3311–12; *Woods,* 888 F.2d at 655 (change from "in custody" to "official detention" does not effect the issue of whether time spent in a halfway house should be credited to a sentence).

that flow directly from that freedom. The desire for freedom is an instinctive characteristic of the human race. Whether we look to a body of law or some legislative code, freedom is easily defined by all. Freedom is the opposite of detention. One need not look to Webster's Dictionary to understand this basic difference. It could be argued that detention, when confined to one's home, is much different than detention when confined to a jail or prison. It is more enjoyable to watch television, to take a shower, or to be with one's family in one's own house than it is to be in a jail-type setting. Still, there is no question that an individual confined to his or her home is detained and incurs a substantial loss of liberty. If the person may not leave home to go to work, to a ball game, to the theatre or out to eat, the person is detained. Here, Wickman was forbidden from leaving his residence (except in the event of a medical emergency or to attend court) from March 9, 1990 until April 16, 1990, at which time he was allowed to go to and from work only. At all times, including when at work, Wickman was required to wear an electronic monitor which was physically attached to his body. Wickman was also prohibited from transacting any business in person at his home or over the telephone. Finally, Wickman was required to submit to blood, breath or urine testing and required to submit to a search of his home, person or automobile upon request of law enforcement or pretrial services personnel. It is all a matter of degree. There is nothing in the legislative history indicating that Congress intended to bifurcate or to diminish the credit received for detention in one's home as contrasted to detention in a prison-like setting. In passing this statute, I believe Congress determined that if a person is detained in a pretrial setting, while enjoying the presumption of inno-

cence, it is only fair that the government give him credit for that time at the end of his sentence.[3]

The refusal of this court and other courts to interpret alternative sanctions such as house arrest as "official detention" ignores present-day concerns regarding prison overcrowding.[4] As the federal government runs out of jail space, the punitive nature of confinement must more frequently be imposed through some lesser means of pretrial control than jail itself. It might be argued the defendant is not officially detained since he might be able to choose between jail (and sentence credit) or home confinement (and no credit). However, that ignores the basic issue. It is not the choice of the individual; it is the choice of the government. The government makes the decision whether a defendant should be confined for various reasons or released on bail. A house arrest clearly benefits the government in that the cost of confinement rests on the individual. Notwithstanding that consideration, it is difficult for me to understand, under the plain meaning of the term, that a person confined to his home through issuance of a court order is not "officially detained."

Thus, we come down to the basic issue of whether "official detention" requires a prison-like confinement or the statute is satisfied when a defendant's liberty interest is violated. In saying this, however, I do not in any way endorse the idea that if a person is released on bond and given certain conditions of travel and so forth, he is detained. Undoubtedly, such restrictions infringe upon the defendant's liberty interest, but the infringement does not constitute detention. But when a person is confined to house arrest, as Wickman was, he is detained. There is neither a common-sense rationale nor a legal reason why we

---

**3.** I note that the federal Sentencing Guidelines equate one day of home detention with one day of imprisonment. U.S.S.G. § 5C1.1(e)(3). Though I realize the Guidelines do not apply to pretrial detention, logic dictates that if Congress intended to equate home detention with imprisonment (for sentencing), they should be treated as the same for pretrial detention as well.

**4.** The local jail occupancy rate in 1989 was 108 percent, as compared to 85 percent in 1983. During that same time, the total prison population increased by 51 percent. In 1989, 26 percent of jails were under federal or state court order or consent decree to. limit the number of inmates and 51 percent held prisoners due to overcrowding in other institutions. Bureau of Justice Statistics Survey (June 30, 1989).

should refuse to recognize this fact. By recognizing the true custodial nature of a house arrest, we can further the use of alternative sanctions as a means of avoiding government expense and prison overcrowding, and still be fair to individuals who are subsequently incarcerated. Congress intended to be fair. This court's interpretation of section 3585(b) does a disservice to that intent.