UNITED STATES of America, Plaintiff,

v.

**Arthur MORI, Defendant.**

**Cr. No. 91–01385 DAE.**

United States District Court,
D. Hawaii.

July 10, 1992.

**630**

Edward H. Kubo, Jr., Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff.

Richard A. Ney, Federal Public Defender, Honolulu, Hawaii, for defendant.

## ORDER GRANTING MOTION FOR WRIT OF HABEAS CORPUS

DAVID ALAN EZRA, District Judge.

On May 11, 1992, defendant filed an Emergency Motion For Writ of Habeas Corpus. On May 18, 1992, this court dismissed the petition because the Bureau of Prisons ("BOP") had not yet computed the defendant's sentence. This court found that it could not calculate the credit, if any, for time served by the defendant in the Miller Hale Halfway House ("Miller Hale") in the first instance in view of the Supreme Court's ruling in *United States v. Wilson,* — U.S. ——, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992).

Defendant filed a motion for reconsideration of this order on May 26, 1992. However, at the time the court addressed the motion for reconsideration, the BOP had still not computed the credit. The motion for reconsideration was accordingly denied on May 28, 1992. Defendant appealed the decision of this court to the Ninth Circuit Court of Appeals. On June 19, 1992, the BOP computed defendant's sentence.

On June 23, 1992, the Ninth Circuit remanded this matter to this court for reconsideration of defendant's petition in view of the BOP's calculation of defendant's credit for time served. The court requested further briefing from the parties in light of the remand order, and held a hearing on July 8, 1992. The court, having considered the moving papers, arguments of counsel, testimony of the witness presented at the hearing, and records and files herein, hereby grants the defendant's petition for writ of habeas corpus.

## DISCUSSION

On July 31, 1991, a Criminal Complaint was filed against defendant charging him with violation of 18 U.S.C. § 2252(a). Also on July 31, 1991, the government moved to detain defendant without bail. Magistrate Judge Bert S. Tokairin entered an Order Of Temporary Detention Pending Hearing Pursuant to Bail Reform Act on July 31, 1991, ordering defendant held in custody until the detention hearing.

A detention hearing was held on August 2, 1991, at which time the magistrate judge found that the defendant was a danger to the community and ordered the defendant detained without bail. On August 6, 1991, defendant filed a motion for reconsideration of the order of detention, wherein he requested that the court allow his release to pre-trial community confinement custody at Miller Hale.

A hearing was held on defendant's motion for reconsideration of detention on August 12, 1991, at which time the magistrate judge granted the motion for reconsideration and ordered defendant released on a $10,000 signature bond, with the special conditions that defendant reside at Miller Hale at all times and to be released only for purposes of his employment; that he abide by the rules and regulations of Miller Hale and all conditions of pretrial release as set out to the defendant in court; and that he be supervised by the probation department during his placement in Miller Hale. *See* Order Setting Conditions of Release filed herein on August 12, 1991 and Order Setting Bail And Committing Defendant To Alternative Custody filed herein on August 26, 1991. Defendant was accordingly released from the U.S. Marshal's custody on August 12, 1991. *See* Release filed herein on August 19, 1991.

On August 21, 1991, defendant was charged in a two count Indictment with

violation of 18 U.S.C. § 2252(a). On November 29, 1991, the defendant pled guilty to Count 2 of the Indictment, and bail including all previously imposed conditions was continued. The plea agreement entered into by the defendant and the government specifically provided that, "... although the Defendant has resided at Miller Hale, the prosecution agrees that said time be considered "incarceration" time, provided that during those days in question, the Defendant did not have freedom to leave the premises." *See* Memorandum of Plea Agreement filed herein on November 29, 1991 at p. 2, ¶ 4.

On December 23, 1991, a Stipulation And Order To Amend Conditions Of Release On Christmas Day was entered by the court allowing defendant to be released from Miller Hale from 9:00 a.m. to 8:00 p.m. on December 25, 1991.

On March 23, 1992, this court sentenced defendant to nine months imprisonment. The amended judgment entered on April 6, 1992 provided that credit for time served was to be computed in accordance with *United States v. Wilson*, —— U.S. ——, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992).[1]

Defendant states that the BOP has now determined that he is entitled to credit for only 14 days spent in custody prior to sentencing, and that he has been denied credit for more than seven months (August 12, 1991 to March 25, 1992) spent in Miller Hale. If credited for his halfway house time, defendant would have completed his nine month sentence as of April 30, 1992.[2]

According to the defendant, the BOP will not give inmates credit for time served in a halfway house as a condition of bond. *See* Affidavit of Annette Metcalf in support of defendant's motion to reconsider emergency motion for writ of habeas corpus filed herein on May 26, 1992. Defendant states that this is contrary to the law of the Ninth Circuit which allows credit for pretrial confinement in a halfway house under certain conditions. Defendant cites to *Brown v. Rison*, 895 F.2d 533 (9th Cir.1990), *Grady v. Crabtree*, 958 F.2d 874 (9th Cir.1992), *Tyree v. Taylor*, 965 F.2d 773 (9th Cir. 1992), and *Mills v. Taylor*, No. 91–55362, 967 F.2d 1397 (9th Cir., June 26, 1992).

I.  *Does The District Court Have Jurisdiction To Review The Attorney General's Computation Of Sentence In Light Of United States v. Wilson*

The government preliminarily argues that *Brown v. Rison*, as well as other Ninth Circuit precedent allowing credit for time served in a halfway house, has been overruled by *United States v. Wilson*, and therefore this court has no jurisdiction to review the credit computation of the BOP. This court disagrees. A careful analysis of *Wilson* does not support the government's contention. Under *Wilson*, the initial credit computation must be made by the BOP; *Wilson*, however, does not hold that this court cannot review that initial computation or otherwise rule on appropriate motions challenging that computation.[3] —— U.S. at ——, 112 S.Ct. at 1354–56.

The Ninth Circuit recently addressed this issue in *Mills v. Taylor*, 967 F.2d 1397 (9th Cir.1992), and rejected a similar argument being made by the government with regard to the effect of *Wilson* and the statutory amendment to 18 U.S.C. § 3568.[4] In *Mills*,

---

1. In *Wilson*, the United States Supreme Court held that the Attorney General, through the Bureau of Prisons, is required to compute the credit for time served after the defendant has begun to serve his sentence, rather than the district court at the time of sentencing.

2. According to the BOP calculation, defendant's release date is December 10, 1992.

3. In the original order dated May 18, 1992 denying defendant's emergency motion for writ of habeas corpus, this court questioned whether it has appropriate jurisdiction over defendant's habeas petition since defendant is in the custody of the warden at the Federal Penitentiary in Lompoc, California. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). However, in view of the Ninth Circuit remand, this court will address the merits of this matter.

4. 18 U.S.C. § 3568 provided:

   The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed.

**632**

the BOP computed the defendant's credit for time served, but did not credit the defendant for time served in a community drug treatment center pending trial and sentencing. Defendant filed a habeas petition in the district court. The district court granted the petition and ordered the warden of the prison to award the defendant the credit he requested. The government appealed. The government argued that the change in the language of the statute from "in custody" to "official detention" signalled Congress' intent to exclude time spent in a community treatment center as a condition of release.

The Ninth Circuit disagreed. The court stated that the words "detention" and "custody" are essentially synonymous, and that after its review of the legislative history and case law in other circuits addressing this issue, concluded that no substantive change was intended by Congress when it replaced "custody" in section 3568 with "detention" in section 3585. The Court also specifically acknowledged the Supreme Court's holding in *Wilson,* and did not find *Wilson* to preclude further application of *Brown v. Rison* in this Circuit. The Ninth Circuit concluded:

> We must therefore conclude that the BOP's interpretation of section 3585 is unreasonable in that it disallows credit for time spent in a community treatment center while awaiting trial and sentencing. We follow *Brown* in holding that when conditions of release approach those of incarceration, a person is in "official detention" for purposes of section 3585. *See also Grady v. Crabtree,* 955 [958] F.2d 874 (9th Cir.1992); *cf. United States v. Freeman,* 922 F.2d 1393 (9th Cir.1991) (denying credit for time spent on pretrial probation).

To paraphrase *Brown,* confinement to a treatment center "fall[s] convincingly

within both the plain meaning and the obvious intent" of "official detention" as it is used in section 3585. 895 F.2d at 536. The district court therefore did not err in awarding Mills credit for time served while detained at the Center.

Therefore, this court now has jurisdiction to review the BOP calculation of the defendant's sentence.

II. *Did The BOP Correctly Compute The Defendant's Credit For Time Served At Miller Hale*

■ In *Brown v. Rison,* 895 F.2d 533 (9th Cir.1990), the defendant spent 15 days in the county jail after arrest, and was then released on bond to the custody of a community treatment center. As a condition of his release, the court ordered him to reside at the center, and he was required to be present at the center from 7 p.m. to 5 a.m. each day, without outside contact. He was also ordered to follow all the rules and regulations of the center, including drug testing. The defendant was also required to maintain his employment, and travel was restricted to a three county area.

At the time of his sentencing, Brown had spent 306 days at the center. The BOP credited his sentence with the 15 days he spent in county jail, but did not credit his sentence with the time spent at the center. It was the BOP's position that "custody" under 18 U.S.C. § 3568 did not include residence in a community treatment center.

Brown then filed a motion with the district court requesting sentence credit for the time served at the center, which the district court granted. The BOP, however, told Brown that the district court did not have the authority to credit his sentence. Brown then filed a petition for writ of habeas corpus which was dismissed by the

---

This section has been repealed and replaced, effective November 1, 1987, by 18 U.S.C. § 3585(b). Section 3585(b) provides:

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

district court on the merits. The Ninth Circuit reversed.

Although acknowledging that courts must accord substantial deference to an interpretation of section 3568 by the agency charged with its administration, the court concluded that it could not accept the BOP's definition of custody. The court stated:

> ... we cannot accept as reasonable a definition of "custody" that excludes enforced residence under conditions approaching those of incarceration; to do so would be contrary to the considerations of fairness that must have underlain Congress's provision of credit for time served.

895 F.2d at 536. With regard to the specific factors influencing its decision in that case, the court stated:

> During his stay at the treatment center, Brown was required to spend each evening and night, from 7 p.m. to 5 a.m., at the center, without outside contact. He was subject to all of the center's regulations. In addition, he had to maintain his employment, restrict his travel, and be subject to drug testing. The center's duty of supervision was established by its contract with Pretrial Services; the center was required to report any violations of Brown's release conditions to the United States Marshal. Brown was subject to this regime for 306 days prior to his sentencing.

*Id. Accord Grady v. Crabtree,* 958 F.2d 874, 875 (9th Cir.1992) ("a defendant who is released on bond to a community treatment center, under conditions of confinement approaching those of incarceration, is considered to have been in custody and is entitled to credit toward his sentence under section 3568"); *Tyree v. Taylor,* 965 F.2d 773 (9th Cir.1992) ("[t]ime spent under substantial conditions of restraint in a community treatment center prior to trial is considered to be time 'in custody' for the purpose of credit against the sentence imposed").

Applying *Brown* to the facts of this case, the court finds that defendant is entitled to credit for time served at Miller Hale. Paul Cuppy, Director of Miller Hale, testified at the hearing of this matter that Miller Hale has a contract with the Federal BOP to house pre-trial and pre-release detainees. Miller Hale's rules and regulations are set forth in its Admission And Orientation Manual which was introduced into evidence as Defendant's Exhibit 1.

In accordance with Miller Hale's rules and regulations, pre-trial detainees must reside at Miller Hale at all times and are to be released only in accordance with a court order setting conditions of release, and in accordance with Miller Hale's own regulations. Pre-trial detainees are allowed to leave Miller Hale only for work, medical appointments and court appearances; special leave is also granted for pre-trial detainees to leave on holidays or other occasions, but only in accordance with a court order.

Mr. Cuppy testified that while defendant resided at Miller Hale he was treated the same as all other pre-trial detainees. In addition to the restraints on his ability to leave the facility, restrictions on phone privileges, visitation rights, management of living quarters and food, and limitations on the types of goods and reading materials that defendant could bring into the facility were imposed. *See* Defendant's Exhibit 1.

Further, Mr. Cuppy stated that phone calls are subject to monitoring, pre-trial detainees may not communicate with inmates at other correctional institutions, and Miller Hale maintains close supervision over pre-trial detainees whenever they are allowed to leave the facility. Miller Hale staff also conduct random checks to assure the whereabouts of the pretrial detainee is accounted for at all times. The record in fact reflects that restrictions placed upon pre-trial detainees are essentially the same as those imposed upon "pre-release" detainees who are technically in BOP custody and receiving BOP credit for time served.

█ The government argues that defendant should not receive credit for all of the time served at Miller Hale because he allegedly abused his privileges there by failing to be at certain scheduled appointments during authorized leave, and by possessing contraband while at Miller Hale, in viola-

tion of Miller Hale's rules and this court's pre-trial release order. *See* Declaration of Edward H. Kubo, Jr. Esq. in support of Government's Memorandum On Remanded Ninth Circuit Issue On Defendant's Incarceration Calculations filed herein on July 2, 1992.

However, the court does not find these alleged violations to be relevant to the instant computation of credit. Such conduct is relevant to whether pre-trial release should have been revoked. The defendant was not timely brought before this court for revocation of pretrial release on those alleged violations. The courts determination at this stage of the proceedings is limited to a review of the defendant's conditions of confinement.

Based on the foregoing, the court finds that the degree of restraint imposed upon defendant and conditions of confinement for pre-trial detainees at Miller Hale approach those of incarceration. Defendant was only allowed to leave Miller Hale to go to work[5] or for other authorized appointments, he had to follow all rules and regulations of Miller Hale, which in some instances, were even more stringent for pre-trial detainees than pre-release detainees,[6] and had to be under the supervision of pretrial probation. Under these conditions, defendant was subject to "enforced residence under conditions approaching incarceration" (*Brown v. Rison*, 895 F.2d at 536), and therefore, is entitled to credit for time served for the 226 days he spent at Miller Hale.

## CONCLUSION

Based on the foregoing, defendant's petition for writ of habeas corpus is hereby granted; the warden of Lompoc prison is ordered to give defendant credit for time

served in Miller Hale and release defendant from confinement. The court, however, will stay the effect of this order until July 15, 1992 in view of the Ninth Circuit remand of this case directing defendant to file a status report with the Ninth Circuit within 21 days of the remand, i.e. July 14, 1992.

IT IS SO ORDERED.

---

**5.** Defendant apparently did not get a job because of arbitration hearings he had to attend based on a dispute with a prior employer. However, as set forth above, this matter was not brought to the attention of this court, and therefore, punishment of this defendant for alleged infractions of Miller Hale and court rules *after* he has spent the time at Miller Hale is not only improper but beyond the scope of the motion before the court at this time.

**6.** Pretrial detainees were only allowed to have immediate family as visitors, while pre-release detainees were allowed to designate whoever they wanted as visitors, provided of course, that the designated visitors passed Miller Hale's security checks. *See* Exhibit 1. Mr. Cuppy testified at the hearing that defendant repeatedly tried to get his girlfriend on his visitation list, but that defendant's request was repeatedly denied.