**UNITED STATES of America**

v.

**Elrader BROWNING, et al. (Anthony Anderson one of the defts.)**

**No. CR 87–571–SVW.**

United States District Court, C.D. California.

Jan. 23, 1991.

John S. Gordon, Asst. U.S. Atty., Los Angeles, Cal., for U.S.

Stanley Greenberg, Abby Besser Klein, Los Angeles, Cal., for defendants.

## ORDER DENYING CREDIT FOR TIME SERVED

WILSON, District Judge.

### INTRODUCTION

Defendant Anthony Anderson ("Anderson") was released on bond during pretrial proceedings on the condition that he remain in his house at all times. Anderson spent thirty-four days at home awaiting trial, before pleading guilty to three counts in the indictment. He was thereafter sentenced by this Court to a ten-year sentence and committed to the custody of the Bureau of Prisons. Anderson now brings a motion before this Court for an order directing the Bureau of Prisons to give him credit against the sentence for the thirty-four days he spent at home awaiting trial. The Bureau of Prisons has denied Anderson's request for credit for time served.

### BACKGROUND

Anderson pled guilty in October 1987 to two counts of cocaine possession with intent to distribute, 21 U.S.C. § 841(a)(1), and one count of money laundering, 18 U.S.C. § 1957. During pretrial proceedings, Anderson was released on bond. As a condition of bond, the Court ordered that Anderson be "confined to his residence, except for court appearances, visits to his lawyer to assist in his defense, or such other absences as might be approved at least twenty four hours in advance by Pretrial Services." To assure his compliance, Anderson was required to wear an ankle bracelet which was electronically connected to a privately-operated monitoring center.

In the event that he strayed from the house, the monitoring center would be electronically alerted and then transmit this information to Pretrial Services.

Anderson now contends that the conditions of his release on bond were so onerous and restrictive as to be tantamount to incarceration, such that he is entitled to a 34–day credit for time served.

### DISCUSSION

#### I.

A claim for credit against a federal sentence for time spent in custody prior to sentencing cannot be raised by a motion to correct illegal sentence (or a habeas corpus petition under 28 U.S.C. § 2255). *See U.S. v. Espinoza*, 866 F.2d 1067, 1070 (9th Cir. 1988). Such a claim challenges the manner of the Attorney General's execution of a sentence rather than the legality of its imposition by the district court. *Id.* Review of the execution of a sentence, however, may be had by way of a petition for a writ of habeas corpus brought by a prisoner under 28 U.S.C. § 2241 in a district court with jurisdiction over the prisoner or his warden. *See U.S. v. Giddings*, 740 F.2d 770, 772 (9th Cir.1984).

Anderson is currently serving a ten-year sentence in a federal prison camp in Boron, California, which is located within this district. Accordingly, this Court would have the power to issue a writ of habeas corpus under § 2241 in this case, provided that Anderson's self-styled motion to correct an illegal sentence were recast as a habeas petition. There appears to be no good reason to dismiss a fully-briefed motion on a procedural flaw which can be readily corrected by the petitioner. Dismissal at this point would serve only to augment court filings, dilate time and increase costs. Hence, the court will treat the present motion as a petition for a writ of habeas corpus brought under 28 U.S.C. § 2241.

#### II.

Anderson contends that he should receive credit against his sentence for the

thirty-four days he spent confined to his house awaiting trial, because such confinement constituted "custody" for purposes of 18 U.S.C. § 3568[1]:

> The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed.

The Bureau of Prisons, which is charged with the administration of section 3568, has denied Anderson's request stating that "it is the opinion of the Bureau of Prisons that time spent 'at home' as a condition of bond is not sufficient restraint to constitute detention within the meaning or intent of 18 U.S.C. 3585[2]." This opinion is consistent with the Bureau's general interpretive statement that " 'in custody' is defined [ ] as *physical* incarceration in a jail-type institution or facility." Program Statement No. 5880.24.

Although Anderson did not appeal the above-quoted determination of the Western Regional Office of the Bureau of Prisons, such failure to exhaust administrative appeals does not divest this Court of jurisdiction to review the petition. *See Chua Han Mow v. United States,* 730 F.2d 1308, 1313 (9th Cir.1984), *cert. denied,* 470 U.S. 1031, 105 S.Ct. 1403, 84 L.Ed.2d 790 (1985) (exhaustion of administrative remedies before filing habeas corpus petition is not statutory requirement). The Court may, in its discretion, excuse the failure to exhaust and reach the merits of the petition. *See, e.g., Brown v. Rison,* 895 F.2d 533, 535 (9th Cir.1990). Since Anderson's request challenges a longstanding interpretation of section 3568 by the Bureau of Prisons, any further administrative appeals by him would be futile. Anderson has heard the agency's definitive word on the matter, and his failure to appeal is therefore excused.

### III.

■ The district court, reviewing the decision of an administrative agency, must accord substantial deference to the agency's interpretation of a statute, and must accept the interpretation if it is a reasonable one. *See Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). However, the district court will reject the agency's interpretation if it is plainly inconsistent with the meaning or intent of the statute. *See, e.g., Brown v. Rison, supra,* 895 F.2d at 536.

The term custody is not defined in section 3568, and the legislative history is equally unhelpful in suggesting what specific types of detention might constitute custody. *See Brown v. Rison, supra,* 895 F.2d at 537 (Wallace, J., dissenting) (citing congressional record). Hence, the Court is limited here to a narrow inquiry of whether the Bureau of Prisons' interpretation conflicts with the ordinary and plain English meaning of the term custody. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 431, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1986) ("ordinary and obvious meaning of [a] phrase is not to be lightly discounted").

### IV.

■ Most of our citizens would be shocked to discover that their homes are just like prisons and their backyards can double as prison yards. Yet, this is precisely what the defendant argues. For thirty-four days, Anderson lived at home awaiting trial. He enjoyed full freedom to wake and slumber as he pleased, to watch television or play his favorite film on the VCR, to receive visitors and colleagues, to order dinner from his favorite restaurant, or to stage a dinner party for family and friends. True, Anderson could not stray from his house without permission, but within his house he enjoyed unfettered freedom. The public understandably suspects that such luxuries of home life are not generally accessible to persons held "in custody."

---

**1.** Anderson pled guilty to offenses occurring before November 1, 1987. The statute governing the crediting of time during pretrial custody for offenses committed before November 1, 1987 is 18 U.S.C. § 3568, which was repealed, effective November 1, 1987, and replaced with 18 U.S.C. § 3585(b). *See U.S. v. Chalker,* 915 F.2d 1254, 1256 (9th Cir.1990).

**2.** *See supra* note 1.

Indeed, one expects that there is no place more agreeable to a person than his own home. It must boggle the mind of an ordinary English speaker to think that being forced to live at home can be tantamount to being held "in custody." After all, one is familiar from childhood with the popular saying that "be it ever so humble, there is no place like home." What is captured by the ordinary understanding of the term custody, as distinguished from home, is the structured environment of a prison-type institution. In an institution, government officials (or their agents) dictate to persons held in their custody when they should sleep, awake, shower, eat, rest, how they should dress, when they are permitted to receive visitors and for how long. At the same time, inmates are under continuous physical surveillance by officials, such that the loss of privacy in an institution is complete and palpable at all times. By contrast, Anderson's home is not an institution in any ordinary sense of the word, and the ankle bracelet worn by him cannot be compared to the intrusive physical surveillance and control exercised by government agents in a genuinely custodial environment.

In an effort to convince the Court that the Bureau of Prisons has flouted the common notion of custody, Anderson tries to liken the conditions of his release to those of the petitioner in *Brown v. Rison, supra.* In *Brown,* the petitioner was "required to spend each evening and night [ ] at [a community treatment] center, without outside contact. He was subject to all of the center's regulations [and] subject to drug testing." 895 F.2d at 536. Under these circumstances the Ninth Circuit concluded that "[t]he conditions of restriction imposed upon Brown during those days were simply too close to incarceration to permit a distinction for purposes of credit against his sentence." *Id; but see Ramsey v. Brennan,* 878 F.2d 995, 996 (7th Cir.1989) (per Posner, J.) (deferring to the judgment of the Bureau of Prisons that time spent in a "residential community center" [halfway house] is not creditable against the sentence).

It is clear that the compelling logic of the *Brown* opinion derived from the character of the restrictive institutional environment of the community treatment center to which Brown was involuntarily committed. Anderson, on the other hand, was not extruded from his home, nor forced to abide by any rules of conduct except his own, nor subjected to regular drug testing, nor deprived of outside contact.

Implicit in the *Brown* opinion is the understanding that the restriction on movement does not alone create custody, at least not without the elements of coercive institutional supervision. Whereas "Brown was subject to 24–hour supervision by the center, which was acting as agent of the criminal justice system," Anderson was insulated within his home from any imposition by the criminal justice system. *Id.* Anderson's ankle bracelet remained inoperative while he was inside his home and was no match for the all-seeing eye of the prison guard or the supervisor at a treatment center.

Anderson futilely argues that his confinement was even more restrictive than Brown's because Brown was required to work during the day and was absent from the center at times dictated by his work schedule. The fact of Brown's employment only highlights the rigid structure of his life at the center. Brown was not free to take a day off, or to go on vacation, or to change jobs. "[H]e had to maintain his employment[,]" as a condition of his bond. *Id.* Every day, from 7 p.m. to 5 a.m., Brown had to be present at the center and abide by its rules. *See id.* At all other times Brown had to be at work (where he was presumably required to follow the instructions of his employer), much like an inmate might have to present himself for work at the prison. Anderson, by contrast, was not subjected to any rigidly fixed schedule, or any schedule at all, and was at all times the master of his own affairs, though within the confines of his home.

Accordingly, the interpretation by the Bureau of Prisons of the term custody so as to exclude from it detention in the defendant's home is reasonable insofar as it is

consistent with the word's plain and ordinary meaning. Moreover, in view of the inherent ambiguity of an undefined statutory term, it is especially proper for the Court to defer here to the Bureau's interpretation.

Accordingly, the Court ORDERS that Anderson's motion, recast as a petition for a writ of habeas corpus under 28 U.S.C. § 2241, be DENIED.

IT IS SO ORDERED.