**UNITED STATES of America, Plaintiff,**

v.

**Donald Lester GOETZ, Defendant.**

### No. CR–91–0244 EFL.

United States District Court, N.D. California.

March 5, 1992.

Steven F. Gruel, Asst. U.S. Atty., San Francisco, Cal., for plaintiff.

Robert Nelson, Asst. Federal Public Defender, San Francisco, Cal., for defendant.

### MEMORANDUM AND ORDER GRANTING DEFENDANT CREDIT TOWARDS TIME SERVED

LYNCH, District Judge.

The above-captioned matter presents the Court with the following question: may the Court grant a defendant credit for time served prior to the imposition of a sentence of imprisonment for time spent prior to that sentence in a residential drug treatment facility?

### INTRODUCTION AND BACKGROUND

Defendant Donald Goetz was arrested by agents of the United States Secret Service

on May 23, 1991, and was indicted on June 5, 1991, for conspiracy to counterfeit, counterfeiting, and possession of counterfeit obligations. Mr. Goetz appeared before United States Magistrate Joan Brennan on June 7, 1991. Pursuant to her Order, Mr. Goetz was "released" pending trial on the condition that he "reside at Newbridge Foundation." [1]

Subsequently, Mr. Goetz pleaded guilty to count one of the indictment after a plea agreement was negotiated between defendant and the United States. Sentencing was set for December 6, 1991. The parties are in agreement that the applicable Guideline range for the offense committed is 12 to 18 months. As of the sentencing date, Mr. Goetz had been at Newbridge for six months. Accordingly, the Court must determine whether or not defendant may be given credit towards his sentence for time served prior to sentencing at Newbridge.

## ANALYSIS

### 1. Conditions of Confinement at Newbridge.

Newbridge Foundation is a residential drug treatment facility that employs profoundly restrictive conditions. As such, Mr. Goetz has been unable to leave the facility except to go to Court and to visit counsel.[2] Additionally, Mr. Goetz is prohibited from making or receiving telephone calls, and could not receive any mail or visitors during his first six months.[3] Mr. Goetz's activities have been closely monitored, and he has not been permitted to read books nor has he been permitted to sleep continuously for more than five hours.

### 2. Applicable Law.

In *Brown v. Rison*, 895 F.2d 533 (9th Cir.1990), the Ninth Circuit held that the conditions of defendant Brown's confinement at E.C.I., a halfway house, deprived him of his liberty to such a degree that he was "in custody" for purposes of receiving credit for time served under 18 U.S.C. § 3568, the statute governing credit for time served at that time. The Court notes that the conditions of confinement in *Brown* were less exacting than those undergone by Mr. Goetz at Newbridge: defendant Brown was required to spend each evening at E.C.I. from 7:00 p.m. to 5:00 a.m.; maintain employment; restrict travel to a three county area; and submit to drug testing. Thus, *Brown* would appear to control, entitling Mr. Goetz to credit for time served. However, the Court must address two issues prior to making that determination: (1) the continuing vitality of *Brown* within the Ninth Circuit; and (2) whether or not a change in the language of the relevant statute precludes the granting of such credit. The Court turns to the latter question first.

### 3. 18 U.S.C. § 3568 and its Successor 18 U.S.C. § 3585.

Prior to November 1, 1987, the relevant statute governing the calculation of terms of imprisonment and credit for time served was 18 U.S.C. § 3568, which provided that:

> The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which the sentence was imposed.

Under the Guidelines, applicable to criminal activity occurring after November 1, 1987, credit for time served is governed by § 3568's successor statute, 18 U.S.C. § 3585(b), which provides that:

> A defendant shall be given credit toward the service of a term of imprisonment for

---

**1.** Defendant was additionally required to post a $50,000 personal recognizance bond signed by two sureties.

**2.** This changed after six months so that Mr. Goetz has been able to leave the facility for six to ten hours once every two weeks accompanied by other Newbridge residents.

**3.** Since January 1, 1992, Mr. Goetz has been permitted one telephone call per week.

any time he has spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed. ...

Thus, the principal difference between the two statutes is that the original uses the term "in custody" and the successor uses the term "in official detention." The issue, then, is whether or not this change signifies that credit for time served may no longer be granted.

*Brown* interpreted the earlier provision, § 3568. In that case, the Ninth Circuit observed that the statute itself did not define "in custody," and that the legislative history did not provide any guidance as to what specific types of detention constituted custody. *Brown*, 895 F.2d at 535. As a result, the court concluded that it could not accept as reasonable "a definition of custody that excludes enforced residence under conditions approaching those of incarceration...." *Id.* at 536. To do so would be "contrary to the considerations of fairness that must have underlain Congress's provision of credit for time served." *Id.*

Accordingly, the *Brown* court found that the conditions of confinement at E.C.I. deprived Brown of his liberty sufficiently that he had to be considered "in custody" for purposes of credit under § 3568. The court focused on the degree of restraint imposed upon the defendant rather than on the physical location in which the defendant was housed. In other words, that the defendant was at a halfway house was not *per se* determinative of whether he would receive sentence credit. Rather, the specific conditions of confinement at the halfway house were determinative.

Turning to the successor statute, only one Ninth Circuit case has considered the meaning of "official detention" under § 3585(b), *United States v. Chalker*, 915 F.2d 1254 (9th Cir.1990). In that case, the Ninth Circuit considered the question as to which entities had the authority to grant a

defendant credit for time served. The Court determined that the Attorney General and the district courts have concurrent authority to grant the defendant credit for time served. That case involved time spent at a residential drug rehabilitation program called Eureka House. *Id.* at 1258. The Court noted that "[a]s a practical matter, our holding will give to the district court, in its discretion, the initial opportunity to grant credit for time previously served." *Id.* Thus, implicit in the *Chalker* decision is that time spent at a residential drug treatment program can constitute time spent "in official detention" under the new statute, 18 U.S.C. § 3585(b).

Additionally, while there is a split among the circuit courts regarding whether a defendant may be credited for time spent in a halfway house, the Court notes that those circuits that have had occasion to interpret both the repealed and the successor statutes have interpreted them similarly. Thus, no circuit has held that "in official detention" under § 3585(b) is to be read any differently from "in custody" under repealed § 3568.

First, in *United States v. Woods*, 888 F.2d 653 (10th Cir.1989), *cert. denied*, 494 U.S. 1006, 110 S.Ct. 1301, 108 L.Ed.2d 478 (1990), the Tenth Circuit refused to grant sentence credit under the new statute for time spent at a community treatment center.[4] The court stated, however, that the meaning of "official detention" in § 3585(b) was the same as "custody" under § 3568, and that Congress did "not intend a different result" from the old statute. *Id.* at 655. Thus, the Court held that:

> for the purposes of our analysis, the only difference between § 3585 and the superseded section is that the latter applies to defendants accused of committing crimes prior to November 1, 1987. We find nothing in the language of 18 U.S.C. § 3585 itself or its legislative history to indicate a departure from the precedents

---

**4.** In *Woods,* the defendant was released pending trial to a halfway house. Defendant was required to reside at the facility, although midway

through his stay he was permitted to spend weekends at home.

decided under the predecessor statute. *Id.* (citation omitted).

Similarly, in *United States v. Insley,* 927 F.2d 185 (4th Cir.1991), the Fourth Circuit denied credit under the new section, quoting the Tenth Circuit in *Woods* for the proposition that the change in language effected no substantive change.[5] The Seventh Circuit is also of the view that "official detention" means full, physical incarceration. *See Ramsey v. Brennan,* 878 F.2d 995, 996 (7th Cir.1989).

Likewise, those circuits that previously granted credit for time served continue to do so under the new section. In *Moreland v. United States,* 932 F.2d 690 (8th Cir. 1991), *vacated, reh'g en banc granted, United States v. Moore,* 1991 WL 66589, 1991 U.S. App. LEXIS 17,755, *stay granted, United States v. Moore,* 951 F.2d 166 (8th Cir.1991), the Eighth Circuit granted a defendant credit for time served in a halfway house, agreeing with *Brown* that the change in language from § 3568 to § 3585 "does not affect the analysis...." *Id.* at 692 n. 4.[6]

Finally, the legislative history of § 3585 provides no indication that Congress intended that subtle change in wording to effect any substantive change. For exam-

ple, Senate Report No. 225 uses the term "in official custody" to describe what "in official detention" means. *See* S.Rep. No. 225, 98th Cong., 2d Sess. (1984).[7]

### 4. Continuing Vitality of Brown.

The Court notes that the Ninth Circuit agreed to rehear *Brown en banc.* However, the release of the defendants in question and the repeal of § 3568 mooted that re-examination. Additionally, the First Circuit in *United States v. Zackular,* 945 F.2d 423 (1st Cir.1991) claimed that "[*Brown* ] appears to have limited precedential force ... even in the circuit of its origin," referring to *United States v. Browning,* 761 F.Supp. 681, 684 (C.D.Cal.1991) and *United States v. Freeman,* 922 F.2d 1393, 1397 (9th Cir.1991).

Contrary to the First Circuit's assertion, however, those cases do not represent any limitation on the vitality of *Brown,* and that case remains the law of this Circuit. Rather, those cases involved situations where the conditions imposed on defendants simply did not amount to "custody" under any definition. *Browning,* for example, involved home release monitored by an electronic ankle bracelet.[8] *Freeman* in-

---

**5.** In *Insley,* the conditions of release on appeal were that the defendant: (1) seek employment; (2) reside in Virginia with her parents and leave the residence only to seek employment or to travel to work or church; (3) report to the United States Probation Office on a regular basis; (4) be in her residence by 9:00 p.m.; (5) execute a bond; (6) be electronically monitored under the direction of the United States Probation Office; (7) submit to random drug testing; and (8) stay in touch with her South Carolina attorney.

**6.** The defendant in *Moreland* was required to reside at a community treatment center where he was subject to random urine and breath tests; nightly bed checks; limited telephone use *etc.* During his stay, the Center gradually increased the amount of time Moreland could be away, although at a minimum he was required to be there from midnight to 8:00 a.m.

**7.** The Court also notes that the government's reliance on a single word in Magistrate Brennan's Order is misguided. Magistrate Brennan "released" defendant Goetz to Newbridge. Emphasizing that term, the government argues that

§ 3585 is inapplicable on its face. In addition to being overly technical and semantic, this argument ignores the fact that in *Brown* itself, the defendant was "released" to E.C.I. Release to custody is simply not release, much the way a magistrate's order that a defendant be "confined at home" or "officially detained at home" would not constitute custody or detention for credit purposes under *Brown.*

**8.** The *Browning* court noted that the defendant "enjoyed full freedom to wake and slumber as he pleased, to watch television or play his favorite film on the VCR, to receive visitors and colleagues, to order dinner from his favorite restaurant, or to stage a dinner party for family and friends."

In a custodial situation, the *Browning* court observed that officials "dictate to persons held in their custody when they should sleep, awake, shower, eat, rest, how they should dress, when they are permitted to receive visitors and for how long. At the same time, inmates are under continuous physical surveillance by officials, such that the loss of privacy in an institution is complete and palpable at all times." *Id.* at 684.

volved an argument for credit for probationary time served, and is completely inapposite to the instant case.

Thus, *Brown* remains the law of this Circuit. Moreover, this Court would suggest the possibility that *Brown* is not so much a renegade from other circuits, but results from factual circumstances that were more exacting than those considered by circuits denying credit, much the way *Browning* denied credit in this Circuit wholly in accordance with *Brown*. In short, defendant Goetz in the present case was subjected to the complete deprivation of his personal liberty. That deprivation, however, was in a facility designed to achieve what must be considered a key goal of our penal system—the rehabilitation of defendant Goetz. Both parties in the present case are in agreement that defendant Goetz engaged in counterfeiting in order to support his heroin addiction. The Court is unaware of any value in an interpretation of § 3585 that hobbles this Court's ability to construct a sentence that will simultaneously exact retribution from defendant Goetz while serving the goal of rehabilitation.

### 5. The Government's Argument that Section 5C1.1(f) of the Guidelines Precludes Credit Is Incorrect.

Finally, the government argues that § 5C1.1(f) of the Guidelines requires that a sentence of "imprisonment" be imposed where the minimum term of a Guideline range is ten months or more. Application Note 8 for that section states that "the minimum term must be satisfied by a sentence of imprisonment without the use of any of the incarceration alternatives in § 5C1.1(e)." Both parties agree that the applicable Guideline range for Mr. Goetz is 12 to 18 months.

However, the Court *is* sentencing Mr. Goetz to imprisonment, and merely granting him credit for time served. Mr. Goetz's program at Newbridge runs for twelve months. This Court has determined that an appropriate sentence for Mr. Goetz is fourteen months. Accordingly, the Court sentences Mr. Goetz to imprisonment for 14 months. The Court suspends imposition of the sentence until August 1, 1992, and grants the defendant credit for time served at Newbridge.

### CONCLUSION

The Court finds that the conditions imposed upon defendant Goetz constitute "official detention" for purposes of credit for time served under 18 U.S.C. § 3585. Those conditions resulted in a profound restriction on Mr. Goetz's liberty that were, in many respects, more intrusive than those he might have undergone in prison. Moreover, the granting of credit allows this Court to impose a sentence that serves society's interest in exacting retribution from defendant Goetz as well as society's and Goetz's interest in achieving rehabilitation. Under *Brown* and other case law addressing rigorously intrusive, custodial programs such as Newbridge, credit is appropriate.

IT IS SO ORDERED.