E. Robert NIGRO, Jr., Petitioner–Appellant,

v.

John SULLIVAN, Warden, Respondent–Appellee.

No. 93–55357.

United States Court of Appeals, Ninth Circuit.

Submitted April 8, 1994 *.

Decided Nov. 4, 1994.

* The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34–4.

E. Robert Nigro, Jr., pro se.

Michael C. Johnson, Asst. U.S. Atty., Los Angeles, CA, for respondent-appellee.

Before: HUG, WIGGINS, and NOONAN, Circuit Judges.

Opinion by Judge WIGGINS; Dissent by Judge NOONAN.

WIGGINS, Circuit Judge:

## FACTS AND PRIOR PROCEEDINGS

E. Robert Nigro is a federal prisoner. During the events relevant to this appeal, Nigro was a pretrial detainee at the Federal Correctional Institute (FCI) at Terminal Island, California. On March 6, 1988, FCI officials required Nigro to provide a urine sample. This sample tested positive for illegal drugs. Prison officials issued an incident report so stating.

Nigro challenged this report under the administrative remedy procedures operative in federal prisons. "The Bureau of Prisons has established an Administrative Remedy Procedure through which an inmate may seek formal review of a complaint which relates to any aspect of his imprisonment.... This procedure applies to all inmates confined in Bureau of Prisons institutions...." 28 C.F.R. § 542.10 (1993). "The ... Warden, Regional Director, and General Counsel are responsible for the operation of the Administrative Remedy Procedure at the institution, regional and central office levels, respectively, and ... [e]stablish[ing] procedures for receiving, reviewing, investigating and responding to complaints or appeals submitted by an inmate...." *Id.* § 542.11(a)(1).

Under the Administrative Remedy Procedure established by the Bureau of Prisons, a prisoner first complains to the Warden (on a BP-9 form) and may appeal to the Bureau's Regional Director (on a BP-10). If the prisoner is not satisfied with the Regional Director's decision, the prisoner may appeal to the General Counsel's Office (on a BP-11). *See id.* § 542.14. Appeals must be filed within established time limits. A prisoner must appeal to the Regional Director "within twenty (20) calendar days of the date of the Warden's response" and to the General Counsel's Office "within thirty (30) calendar days from the date of the Regional Director's response." *Id.* § 542.15. Upon receipt of an appeal, the Warden, Regional Director, or General Counsel's Office must "[a]cknowledge receipt of a complaint or appeal by returning to the inmate a receipt." *Id.* § 542.11(a)(2). "A complaint or appeal is considered filed when the receipt is issued." *Id.* § 542.14.

Pursuant to these regulations, Nigro filed a BP-9 form asking that the report regarding the urine test be removed from his record. Two hearings were held at which Nigro appeared and was provided representation. At the second hearing, on May 5, 1988, before the Disciplinary Hearing Officer (DHO), Nigro called no witnesses but did submit theories regarding how the test results could be incorrect. The DHO found that Nigro had tested positive for narcotics as charged and that 60 days segregated confinement was appropriate punishment.

Nigro appealed, on a BP-10 form, to the Regional Director for the Bureau of Prisons. The Regional Director set forth on the BP-10 form his response denying Nigro's appeal and sent the form back to Nigro. The response is dated May 23, 1988. The BP-10 form states: "If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response."

Nigro appealed to the General Counsel's Office, on a BP-11 form. Nigro claims he gave his BP-11 form to prison officials on June 21, 1988. The BP-11 was not received in the General Counsel's Office until July 7,

1988, however. Because the form was received over 30 days after the date of the Regional Director's response, no receipt could have been issued to Nigro until that date or later. Nigro's appeal was therefore denied on July 12, 1988, as untimely.

On July 29, 1992, Nigro filed a petition for a habeas writ. Nigro challenged the hearing officer's determination that Nigro had used narcotics. On February 5, 1993, the federal magistrate recommended that Nigro's petition be dismissed because Nigro had failed first to present his arguments to the General Counsel's Office. Because the time for presenting such arguments had passed, the magistrate found that Nigro was in procedural default of this administrative remedy. The magistrate also ruled that Nigro had failed to establish cause and prejudice for his default. The district court adopted the magistrate's recommendation. Nigro appealed the dismissal of his petition.

## ANALYSIS

■ A denial of a petition for habeas corpus is reviewed de novo. *Adams v. Peterson,* 968 F.2d 835, 843 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1818, 123 L.Ed.2d 448 (1993). "To the extent it is necessary to review findings of fact, the clearly erroneous standard applies." *Thomas v. Brewer,* 923 F.2d 1361, 1364 (9th Cir. 1991).

### I. Procedural Default

■ Nigro's BP–11 form arrived at the General Counsel's Office well after the thirty day time limit had expired. The district court found that the form was filed late and that the late filing amounted to procedural default of Nigro's administrative remedy, warranting dismissal. We agree with the district court.

Two cases persuade us: *Francis v. Rison,* 894 F.2d 353 (9th Cir.1990), and *Martinez v. Roberts,* 804 F.2d 570 (9th Cir.1986). Francis failed to appeal a warden's decision under the Administrative Remedy Procedure. By the time Francis filed his habeas petition regarding the matter, the time for appeal to the Regional Director had passed. This

court therefore held that Francis had procedurally defaulted. 894 F.2d at 354. *Francis* ultimately concluded that dismissal of Francis's habeas petition was unwarranted because the government had waived Francis's procedural default. *Id.* at 355. By implication the default would have warranted dismissal had no waiver occurred, however. Our analysis in *Martinez* buttresses that conclusion:

> The Bureau of Prisons has established an administrative remedy by which an inmate in a federal prison may seek review of any aspect of imprisonment. 28 C.F.R. § 542.10 (1984). Difficulties which a prisoner may experience in meeting the time requirements for an administrative appeal are properly first brought before the administrative agency. 28 C.F.R. § 542.15 (1984).

804 F.2d at 571. The *Martinez* court dismissed Martinez's habeas petition because Martinez failed to exhaust the administrative remedies provided to him by the Administrative Remedy Procedure.

■ In this case, Nigro failed to file a timely BP–11. A BP–11 "is considered filed when [a] receipt [for it] is issued." 28 C.F.R. § 542.14 (1993). The receipt "[a]cknowledge[s] receipt [by the General Counsel] of a[n] ... appeal." *Id.* § 542.11(a)(2). No receipt could have been issued to Nigro until after July 7, 1988, when the General Counsel's Office received Nigro's BP–11 form. July 7th was more than 30 days after the date of the Regional Director's response. The appeal was therefore not timely filed. *See id.* § 542.15. For this reason, Nigro has procedurally defaulted. *See Francis,* 894 F.2d at 354. This default warrants dismissal of his petition. *See id.; Martinez,* 804 F.2d at 571.

We reject Nigro's contentions to the contrary. Nigro's primary contention is that his BP–11 appeal form was timely filed under *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). In *Houston,* a *pro se* habeas petitioner tried to appeal a district court's dismissal of his petition. The petitioner drafted a notice of appeal and deposited it with prison authorities, for mailing, twenty-seven days after judgment was en-

tered dismissing the habeas petition. The date of this deposit was recorded in the prison log of outgoing mail. The notice of appeal did not arrive at the district court until four days later, however, thirty-one days after the district court entered judgment.

The court of appeals dismissed the appeal because it thought the notice untimely under Fed.R.App.P. 4(a)(1), which required that the notice be "filed" within thirty days of the date of judgment. 487 U.S. at 268–69, 108 S.Ct. at 2381–82. Had "filing" meant only receipt of the notice of appeal by the district court, the court of appeals would have been correct. The Supreme Court held, however, that the petitioner's "notice of appeal was filed at the time [he] delivered it to the prison authorities for forwarding to the court clerk." *Id.* at 276, 108 S.Ct. at 2385. The Court reasoned that the ambiguous word "filed" was open to that construction. *Id.* at 272–76, 108 S.Ct. at 2383–85. Neither Rule 4(a)(1) nor the applicable statute "set[ ] forth criteria for determining the moment at which ... 'filing' has occurred." *Id.* at 273, 108 S.Ct. at 2383–84.

The Court noted further that *pro se* prisoners stand in a position different than that of other litigants. Specifically, *pro se* prisoners cannot personally travel to the courthouse to see that a notice of appeal is stamped "filed." Rather, the *pro se* prisoner is forced to trust the prison mail system and the U.S. postal service. The prisoner cannot even monitor the mails to ensure that the notice is received by the court. The prisoner's control over the filing ceases when he delivers it to prison authorities. Moreover, in habeas cases, prison officials have an incentive to delay forwarding prisoners' court filings. The prisoner is unlikely to have means of proving that prison officials delayed his appeal. 487 U.S. at 270–73, 108 S.Ct. at 2382–83.

Nigro correctly notes that we have applied the *Houston* rationale to hold that *pro se* prisoners successfully "mail" or "serve" papers under Fed.R.Civ.P. 5(b), 33, and 34 merely by depositing them with prison authorities for mailing. *Faile v. Upjohn Co.,* 988 F.2d 985, 988 n. 4, 988–89 (9th Cir.1993).

The *Faile* court noted the *pro se* prisoner's unique situation and construed "service" broadly to include a *pro se* prisoner's best efforts to mail papers. 988 F.2d at 987–89. The *Faile* court noted, "[W]e see no reason to treat other civil 'filing' deadlines differently than the deadline for filing a civil appeal." 988 F.2d at 988. *Houston* and *Faile* eloquently set forth the prisoner's position. For several reasons, however, *Houston* and *Faile* do not apply in this case.

First, both *Houston* and *Faile* addressed an undefined term, "file" or "serve." These terms, left undefined, are susceptible to the construction given them in *Houston* and *Faile.* In this case, the operative term "file" is defined, however. An appeal is "considered filed when the receipt is issued." 28 C.F.R. § 542.14 (1993). "Issuance of a receipt" does not and cannot mean "deposited with prison authorities." "File" in this case is simply not open to the interpretation given it in *Houston* or given "serve" in *Faile.*

Nigro might argue that the proposition that "an appeal is considered filed when a receipt for it is issued" does not preclude an appeal being considered filed at other times as well. This argument conflicts with the second sentence in 28 C.F.R. § 542.14, however. This second sentence states in reference to a BP–11 appeal, "Once filed, response shall be made ... by the General Counsel within thirty (30) calendar days." The response deadline runs from the time an appeal is filed. "Filed," in this second sentence, makes sense only if it means roughly "received" or, as indicated in the first sentence of § 542.14, "when a receipt is issued." If an appeal could be deemed filed at the time it is delivered to prison officials for mailing, General Counsel might well be required by the regulation to respond to the appeal prior to receiving it, a nonsensical result. Moreover, the General Counsel's Office generally has no idea when an appeal is given to prison officials for mailing. The General Counsel cannot be required to respond within thirty days of a date it does not know. "Filed" in this second sentence therefore means at least "received." Most likely it refers to the "issuance of a receipt" noted in the first sentence. Under this "filed" requirement, Nigro failed

to file his BP–11 within applicable time limits, which failure resulted in procedural default.

*Houston* and *Faile* paint the *pro se* prisoner in a sympathetic light. We cannot in the name of sympathy rewrite a clear procedural rule, however. Neither *Houston* nor *Faile* supports such a rewriting. Moreover, *Fex v. Michigan*, —— U.S. ——, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993), would not allow it. *Fex* addressed the requirement that a prisoner "cause[ ] [a certain request] to be delivered." The court noted, "[Michigan] argues that no one can have 'caused something to be delivered' unless delivery in fact occurs. That is self-evidently true, and so we must reject [Fex's] contention that a prisoner's transmittal [of a request] to the prison authorities [suffices] even if the request gets lost in the mail and is never delivered...." *Id.* at ——————, 113 S.Ct. at 1088–89.

■ *Fex* made to the Court a "policy argument" that "fairness requires the burden of compliance with the [delivery] requirements ... to be placed entirely on the law enforcement officials involved, since the prisoner has little ability to enforce compliance." *Id.* at ——, 113 S.Ct. at 1091 (internal quotations omitted). *Fex* also argued that requiring timely and actual delivery would leave neither practical nor legal limit on the length of time prison authorities could delay forwarding a request. The Court responded:

> These arguments, however, assume the availability of a reading that would give effect to a request that is never delivered *at all*.... As we have observed, the tex-

tual requirement "shall have caused to be delivered" is simply not susceptible of such a reading. Petitioner's "fairness" and "higher purpose" arguments are, in other words, more appropriately addressed to the legislatures....

*Id.* (emphasis in original). The Court rejected the dissent's suggestion that *Houston* should apply. —— U.S. at ——, 113 S.Ct. at 1094 (Blackmun, J., dissenting). Consequently, *Fex* instructs that *Houston* policies cannot override the plain meaning of a procedural rule. *See also Guirguis v. INS*, 993 F.2d 508, 510 (5th Cir.1993) (holding that *Houston* does not apply to federal court of appeals filings required by explicit rule to be "received by the clerk within the time fixed for filing," Fed.R.App.P. 25(a) (1993)).

In *Faile*, we neglected to engage in a textual analysis of "serve." Such a textual analysis was unnecessary, however, because "serve" was susceptible to the meaning given to "filing" in *Houston*. In *Faile*, given the natural ambiguity of "serve," we properly applied the policies *Houston* stressed. However, nothing in *Faile* or *Houston* allows us to rewrite a clear procedural rule. Rather, as *Fex* held, policy arguments are best addressed to rulemaking bodies when a procedural rule is clear.[1] For the foregoing reasons, *Houston* and *Faile* are inapplicable in this case.

■ *Houston* and *Faile* are inapposite for a separate, additional reason. *Houston* and *Faile* addressed only civil filing or service deadlines. No civil deadline is at issue in this case, however. Nigro's appeal to the

---

1. We are aware that some courts have indicated that *Houston* rests partly on due process grounds. *E.g., Brewer v. Wilkinson*, 3 F.3d 816, 820–21 (5th Cir.1993) (associating *Houston* with cases involving a due process right of prisoners to access to the courts), *cert. denied*, —— U.S. ——, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994). Though *Houston* obviously rests on policy arguments and some notion of fairness, *see* 487 U.S. at 270–73, 108 S.Ct. at 2382–83, we have looked in vain for any explicit reference to due process in *Houston*. We note, moreover, that none of our cases discussing *Houston* has stated any relationship between *Houston* and due process. *See Faile*, 988 F.2d at 985; *Vaughan v. Ricketts*, 950 F.2d 1464 (9th Cir.1991); *United States v. Prairie Pharmacy, Inc.*, 921 F.2d 211 (9th Cir.1990); *Sudduth v. Arizona Att'y General*, 921 F.2d 206 (9th Cir.1990); *Miller v. Sumner*, 921 F.2d 202 (9th Cir.1990); *Hostler v. Groves*, 912 F.2d 1158 (9th Cir.1990), *cert. denied*, 498 U.S. 1120, 111 S.Ct. 1074, 112 L.Ed.2d 1180 (1991); *United States v. Angelone*, 894 F.2d 1129 (9th Cir.1990); *Miller v. Sumner*, 872 F.2d 287 (9th Cir.1989). Nor does the case on which *Houston* relies, *Fallen v. United States*, 378 U.S. 139 (1964). In any case, we need not and do not address any due process arguments in this case. Nigro has not raised them. And were such due process arguments raised, cases involving access to the courts would be inapposite, for this appeal involves access to administrative procedures. More apposite would be *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), in which administrative procedures were at issue.

General Counsel was an administrative proceeding. Neither Congress nor the courts fashion the procedural rules that apply in the Bureau of Prisons' Administrative Remedy Procedure. Rather, this procedure is governed by administrative regulations promulgated and enforced by the executive branch under the authority of 5 U.S.C. § 301; 18 U.S.C. §§ 3621, 3622, 3624, 4001, 4042, 4081, and other sections of 18 U.S.C.; and 28 U.S.C. §§ 509 and 510. *See* 28 C.F.R. § 542 (1993). These statutes delegate authority to the executive to establish substantive rules governing prisons. Administrative Remedy Procedure regulations are therefore not interpretive. Rather, they are legislative. *See Fmali Herb, Inc. v. Heckler*, 715 F.2d 1385, 1387 (9th Cir.1983). Such "legislative regulations must be accorded their plain meaning where the language selected by the drafters is clear and unequivocal." *Idaho First Nat'l Bank v. C.I.R.*, 997 F.2d 1285, 1289 (9th Cir.1993) (internal quotations omitted).

■ Furthermore, "[a]n agency's interpretation of its own regulation [in an individual case] is entitled to a high degree of deference and will be upheld as long as it is not plainly erroneous or inconsistent with the regulation." *Rendleman v. Shalala*, 21 F.3d 957, 961 (9th Cir.1994) (holding that no plain error occurred in an agency's interpretation of its own legislative regulation with respect to an administrative litigant); *Washington State Health Facilities, Ass'n v. Washington Dep't of Social and Health Serv.*, 879 F.2d 677, 681 (9th Cir.1989). The Bureau of Prisons' interpretation of "filed" in Nigro's case is neither plain error nor inconsistent with the regulation. "Filed" may reasonably be defined to mean "issuance of a receipt" or "received." *See United States v. Lombardo*, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897 (1916) (rejecting a mailbox rule construction of "file" and concluding that receipt was required); *Allen v. Schnuckle*, 253 F.2d 195, 196–97 (9th Cir.1958) (same).

■ Moreover, the regulations at issue are fair to prisoners. They ensure that prison officials will not interfere with a prisoner's appeals. The Warden, Regional Director, and General Counsel must "[e]stablish procedures for receiving … appeals submitted by an inmate." 28 U.S.C. § 542.11(a)(1) (1993). Further, regulations provide for relief when a prisoner cannot meet time limits. When "a valid reason for delay is stated by an inmate[,] the[ ] time limits may be extended." *Id.* § 542.15. Given that interference by government officials would constitute an excuse for procedural default, *Francis*, 894 F.2d at 355, and that "the prison's failure to act promptly cannot bind a *pro se* prisoner," *Houston*, 487 U.S. at 276, 108 S.Ct. at 2385, it would appear that delay by prison officials or the U.S. mail system would constitute a valid reason for delay. By excusing valid delay, the Administrative Remedy Procedure largely accounts for the inability of prisoners to monitor submissions to the prison system and ensure the filing of such submissions. Because the regulations account for potential unfairness resulting from the *pro se* prisoner's position, the policies discussed in *Houston* are inapposite. Accordingly, we require that "[d]ifficulties which a prisoner may experience in meeting the time requirements for an administrative appeal are properly first brought before the administrative agency." *Martinez*, 804 F.2d at 571.

In this case, Nigro requested an extension of time but did not allege that prison officials or the U.S. Postal Service delayed the mail. Rather, he alleged that another matter kept him busy and that prison officials provided him an appeal form fifteen days before it was due to be filed. That he was busy is hardly an excuse. Fifteen days was plenty of time to fill in the short BP–11 form, attach the appeal, and mail the form. No unfairness resulted to Nigro in this case. Thus, the Bureau's interpretation of its regulation was not plain error and should be upheld.[2]

---

2. The regulations likewise survive any facial challenge that might be made. When subject to facial challenges, "[s]uch regulations have the force and effect of legislation, and may not be set aside because a court would have read the statutory mandate differently." *Fmali Herb*, 715 F.2d at 1387; *see Batterton v. Francis*, 432 U.S. 416, 425, 425 n. 9, 97 S.Ct. 2399, 2405, n. 9, 53 L.Ed.2d 448 (1977). The regulations are "entitled to more than mere deference or weight." *Batterton*, 432 U.S. at 426, 97 S.Ct. at 2406. They can be set aside only if they exceed statutory authority or are "arbitrary, capricious, an abuse of discretion, or otherwise not in accor-

For the foregoing reasons, we conclude that *Houston* and *Faile* were inapplicable to Nigro's BP–11 appeal. Nigro's failure to file the appeal in a timely manner means that Nigro procedurally defaulted his administrative remedy. *See Francis*, 894 F.2d at 354; *Martinez*, 804 F.2d at 571. Because we conclude that *Houston* and *Faile* do not apply, we do not consider Nigro's arguments relating to when he handed his BP–11 form to prison officials.

## II. Cause and Prejudice

■ Cause and prejudice may excuse a procedural default of administrative remedies. *Francis*, 894 F.2d at 355, 355 n. 2. Nigro asserts excuses for his late filing. He contends that prison officials did not let him have the BP–11 form until June 7, 1988, a date written on the top right corner of Nigro's BP–11 form.

Nigro also asserts that he was denied access to the law library. Nigro notes that he wrote to the ACLU in April 1988 requesting assistance in gaining access to the law library. On June 24, 1988, Nigro requested access to the law library from prison officials. Also, Nigro claims he filed, on July 11, 1988, a motion in federal court for an order giving him access to the library. He contends that he was denied access to the library throughout this time.

Nigro claims these causes excuse his procedural default, citing *Shah v. Quinlin*, 901 F.2d 1241 (5th Cir.1990). In *Shah*, the district court dismissed Shah's *pro se* complaint for failure to exhaust administrative remedies because Shah's BP–10 form was not received by the Regional Director within the required time limits. An appeal to the General Counsel's Office was not accepted because the appeal to the Regional Director was not timely. In the meantime, Shah had complained to the warden that the prison mail system was delaying delivery and processing of prisoner complaints. 901 F.2d at 1242–43. Shah showed a "substantial effort to obtain an administrative remedy." *Id.* at

1244 (internal quotations omitted). The court therefore held that he should be allowed to amend his complaint to allege that he had exhausted his administrative remedies. *Id.* Nigro claims he has shown the same efforts as did Shah.[3]

■ We conclude that Nigro has not shown cause and prejudice. Failure of prison officials to provide Nigro a BP–11 form until June 7th, even assuming such failure occurred, did not interfere with Nigro's access to administrative remedies. Nigro's BP–11 submission is primarily attachments, handwritten on notebook paper. The actual BP–11 form contains only a few written words and otherwise refers the reader to the attachments. Nigro could have written the attachments any time after he received the response from the Regional Director. He did not need more than a few days, at most, to fill out the actual BP–11 form.

In addition, Nigro failed to show prejudice. Even if we assume Nigro was unable to procure the BP–11 form from prison officials until June 7th, Nigro makes no allegation that he was unable to fill out the form properly and fully in the time allotted him. And though Nigro makes a bare allegation that the law library was necessary to fill out the BP–11 form, Nigro does not indicate what, if anything, he would have done differently had he had access to the law library. A "merely conclusory statement" such as Nigro's fails to demonstrate "actual prejudice resulting from the claim of error." *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir.1993). Accordingly, the district court correctly ruled that Nigro failed to show prejudice.

## III. Other Arguments

### A. Failure to Exhaust as Jurisdictional

■ Nigro argues that exhaustion of administrative remedies is not a jurisdictional requirement, citing *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir.1990). In response, the government notes that *Brown* allows courts

---

dance with law." *Id.* (internal quotations omitted). The Administrative Remedy Procedure easily passes this test.

**3.** The government also claims that Nigro never argued in the district court that he was denied access to the law library. Nigro did raise the argument below, however.

discretion to dismiss for failure to exhaust administrative remedies. *Id.* In any case, the district court dismissed not for lack of jurisdiction or failure to exhaust remedies but because Nigro had procedurally defaulted. We agree that Nigro has procedurally defaulted. His procedural default was a sufficient basis for dismissal.

**B. The Bureau of Prison's Late Response**

▮ Nigro claims that the Regional Director's response to his BP–10 form was 36 days late. He claims that the government is in default as a result. Nigro claims this default gave the government "unclean hands" and that it would be unfair for the government now to claim that Nigro's BP–11 form was too late.

We disagree. Regulations allow the Regional Director to respond after time limits have expired: "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.14. Moreover, government delay does not affect how long the prisoner has to respond. The period in which the prisoner may appeal runs from the time the prisoner receives the Regional Director's response, whenever issued. *Id.* § 542.15. Finally, Nigro has failed to show any prejudice resulting from the government's delay.

**C. Technicalities**

▮ Nigro argues that the lower court avoided the merits of his habeas petition because of mere technicality. Citing *Schiavone v. Fortune,* 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), he notes that "decisions on the merits are not to be avoided on the basis of mere technicalities." *Id.* at 27, 106 S.Ct. at 2383 (internal quotations omitted). We are not persuaded. *Schiavone* and the cases it cites address whether civil pleadings sufficiently alleged information necessary to set out a claim against another party. *Schiavone* does not address whether a procedural default in seeking administrative remedies

warrants dismissal of a habeas petition, however. Procedural default will support a dismissal, even if technically inadequate pleadings will not. Procedural default is therefore not a mere technicality.

## CONCLUSION

For the foregoing reasons, we affirm. *Houston v. Lack,* 487 U.S. at 266, 108 S.Ct. at 2379, does not require a finding that Nigro's BP–11 form was timely filed with the Bureau of Prison's General Counsel's Office. His BP–11 form was untimely. Nigro has failed to show cause and prejudice excusing this procedural default.[4]

AFFIRMED.

NOONAN, Circuit Judge, dissenting:

"Habeas corpus jurisdiction ... exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole." *Bostic v. Carlson,* 884 F.2d 1267, 1269–74 (9th Cir.1989), citing *McCollum v. Miller,* 695 F.2d 1044, 1047 (7th Cir.1982). In both *Bostic* and *McCollum* expungement of the disciplinary finding would accelerate the petitioners' eligibility for parole, because part of the sanction imposed was forfeiture of Statutory Good Time credit toward parole. Nigro does not allege loss of good time credit, but "possible impact at any parole hearing and/or pre-release program." This unsubstantiated speculation is insufficient for the court to infer that if the disciplinary proceedings are expunged the length of imprisonment will be reduced. *Id.* at 1047. We lack jurisdiction to reach the merits of his appeal.

---

4. In a portion of his opening brief, Nigro argues the merits of his habeas petition. Because we affirm the dismissal of the habeas petition for procedural default, we decline to review these arguments.