Scott Charles SEEHAUSEN,
Petitioner,

v.

Ginny VAN BUREN, Respondent.

No. CIV.02–378–ST.

United States District Court,
D. Oregon.

Dec. 20, 2002.

Stephen R. Sady, Chief Deputy Federal Defender, Portland, OR, for Petitioner.

Michael W. Mosman, United States Attorney, Kenneth C. Bauman, Assistant United States Attorney, Portland, OR, for Respondent.

## ORDER

HAGGERTY, Chief Judge.

Magistrate Judge Stewart filed her Findings and Recommendation on December 20, 2002 (doc. # 30). The matter is now before the court pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). No objections have been filed. Having reviewed the legal principles *de novo,* the court finds no error.

Accordingly, the court adopts the Magistrate Judge's Findings and Recommendation. The petitioner's writ of habeas corpus (doc. # 1) and motion for partial summary judgment (doc. # 16) are granted as to the expungement of petitioner's disciplinary records and otherwise denied.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

STEWART, United States Magistrate Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2241. He alleges that the Bureau of Prisons ("BOP") infringed upon his basic due process rights when it found him guilty of violating prison rules. For the reasons that follow, the

Petition for Writ of Habeas Corpus (docket # 1) and petitioner's Motion for Partial Summary Judgment (docket # 16) should be granted as to expungement of the disciplinary records and otherwise denied.

## BACKGROUND

Petitioner is serving a 71–month sentence on two counts of mail fraud. While incarcerated at FCI–Sheridan, petitioner telephoned David Reyes–Espinosa, a former member of his prison softball team, at a private home. Reyes–Espinosa was on home confinement at the time. During their conversation, Reyes–Espinosa indicated that he had ten days left to serve at a halfway house. The two continued to talk for another 14 minutes after this disclosure. Respondent's Exhibit, p. 2. As a result of the telephone call, on December 10, 2001, petitioner received a notice that he was being subjected to disciplinary proceedings based on a violation of a telephone policy against calling inmates at a halfway house. The matter was referred to a Disciplinary Hearings Officer (DHO) for review.

On January 3, 2002, petitioner came before the DHO with a prison counselor, C. Williams, acting as his representative. Williams maintained that there was nothing in the prison policies indicating that a prisoner could not place a telephone call to another inmate. The DHO acknowledged that petitioner was given an early version of the inmate handbook that "did not spell out the new telephone procedure initiated in early 2000." *Id.* at 3. He did, however, identify several statements that he believed effectively communicated the prohibition: (1) a town hall meeting where rules governing telephone use were discussed; (2) an article in the prison newsletter discussing telephonic activities that would subject an inmate to discipline; and (3) explicit limitations on written correspondence between inmates. *Id.* at 3. Based on

the foregoing, the DHO reached the following conclusion:

> It should be clear to [petitioner] if the BOP must have approval for inmates to write to each other, [there] must be approval for inmates to talk on the telephone to each other. It is obvious to the DHO that [petitioner] knew he could not call another inmate on the telephone. He is claiming ignorance as an excuse. There is no excuse for [petitioner's] behavior. The DHO finds even though [petitioner] denies the charge, he has not provided any facts or evidence to support his denial.

*Id.* at 3–4.

The Unit Disciplinary Committee, which had reviewed petitioner's case prior to his hearing before the DHO, recommended a loss of telephone privileges of 180 days, no loss of good time credit and a reduction of the severity of the charge from the High category to the Low–Medium category. TRO Hearing Transcript, p. 24. The DHO elected to maintain the severity rating at the High level and sanctioned petitioner to the loss of 27 days good time credit and the suspension of telephone privileges for one year. Respondent's Exhibit 7, p. 4.

Petitioner filed for administrative review of the DHO's decision on January 14, 2002, but his appeal was not considered because it was untimely. Respondent's Exhibit 12, pp. 1 & 2.

On March 25, 2002, petitioner filed this habeas action protesting the deprivation of his good-time credits, loss of telephone privileges and imminent transfer from FCI–Sheridan to FCI–Safford (which he characterized as retaliatory). In conjunction with the filing of his habeas action, petitioner asked the court to issue a temporary restraining order ("TRO") preventing his impending transfer from FCI–Sheridan as well as the restoration of his telephone privileges. On April 19, 2002,

the Honorable Malcolm F. Marsh held a TRO hearing and granted relief as to the restoration of petitioner's telephone privileges, but denied relief on the transfer issue. Three days later, the BOP transferred petitioner to FCI–Safford.

On April 29, 2002, the DHO amended his findings to change petitioner's sanction to a lower-level sanction which did not include the loss of good time credit. He also reduced the telephone sanction to 180 days. Respondent's Exhibit 11, pp. 2 & 4. Petitioner appealed this decision to the Regional Director on May 15, 2002, but the appeal was denied on June 14, 2002. Petitioner did not appeal this decision to the Central office. Respondent's Exhibit 12, p. 2.

Currently before the court is the Petition for Writ of Habeas Corpus (docket # 1) and petitioner's Request for Partial Summary Judgment (docket # 16), which the court construes as a memorandum in support of the petition.[1] Respondent asks the court to deny relief to petitioner because: (1) he has not exhausted his administrative remedies; (2) the DHO acted properly and imposed appropriate sanctions; and (3) the case is moot.[2]

## DISCUSSION

### I. Exhaustion of Administrative Remedies

█ It is well settled that federal prisoners must generally exhaust their federal administrative remedies prior to filing a habeas corpus petition pursuant to 28 U.S.C. § 2241. *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir.1986); *see also Fendler v. United States Parole Comm'n*, 774 F.2d 975, 979 (9th Cir.1985). The exhaustion requirement as applied to federal prisoners is not jurisdictional, but its importance is well established. *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir.1990).

Although a petitioner's failure to exhaust his administrative remedies may be excused, the court remains cognizant of the importance of the exhaustion requirement. Requiring a petitioner to exhaust his administrative remedies aids "judicial review by allowing the appropriate development of a factual record in an expert forum." *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir.1983). Use of available administrative remedies conserves "the court's time because of the possibility that the relief applied for may be granted at the administrative level." *Id.* Moreover, it allows "the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings." *Id; United Farm Workers v. Arizona Agric. Employ. Relations Bd.*, 669 F.2d 1249, 1253 (9th Cir.1982).

The BOP has established an administrative remedy procedure which requires an inmate to: (1) raise his complaint with the Warden of the institution where he is confined, (2) present an appeal to the Region-

---

1. The Scheduling Order in this action does not provide for the filing of a Motion for Summary Judgment, but anticipates only the filing of the Petition, the Answer and a response made up of "additional papers, legal arguments or legal authorities in support of the petition. Absent court approval, no other documentation shall be filed." Second Amended Scheduling Order (docket # 23), p. 2

2. This court previously denied respondent's motion to dismiss based on the argument that this action is moot, concluding that collateral consequences of the disciplinary action may continue to affect petitioner. Findings and Recommendations (docket # 20) dated June 12, 2002, adopted by Order dated July 24, 2002 (docket # 23). This court declines to again decide the mootness issue, despite respondent's belated attempt to revive it. Furthermore, respondent does not deny that an inmate's disciplinary record may affect discretionary programs and benefits.

al Director; and (3) present a final appeal to the Central Office of the BOP. 28 C.F.R. § 542 *et seq.* An exception exists for inmates, such as petitioner, who challenge the actions of the DHO. Appeals of DHO decisions commence with an immediate appeal to the Regional Director, bypassing the Warden. 28 C.F.R. § 542.12(d)(2). A petitioner fully exhausts his remedies when the Central Office rules on the merits of his claims. 28 C.F.R. § 542 *et seq.*

Petitioner appealed the original DHO report on January 14, 2002. That appeal was received on January 28, 2002, and rejected the next day. Declaration of Douglas S. Goldring ("Goldring Decl'n."), ¶ 7. The rejection appears to have been based on petitioner's failure to comply with a technical requirement, as he was allowed 15 days in which to resubmit his appeal. *Id.* at 3. When petitioner was unable to meet this deadline, the Regional Office rejected the appeal as untimely. Petitioner appealed this rejection to the Central Office, which agreed with the Regional Office's determination that the appeal was not timely. *Id.* Accordingly, the Central Office never reached the merits of petitioner's claim.

After the TRO hearing in this action, the DHO amended his findings, reducing petitioner's sanction. Respondent's Exhibit 11, p. 2. Petitioner appealed this decision to the Regional Director on May 15, 2002, but the appeal was denied on June 14, 2002. Petitioner did not appeal this decision to the Central office. Goldring Decl'n., ¶ 10.

■ Respondent argues that because petitioner is no longer permitted to pursue his administrative remedies, he has procedurally defaulted review of his claims. *See Nigro v. Sullivan,* 40 F.3d 990, 993 (9th Cir.1994); *see also Francis v. Rison,* 894 F.2d 353, 354–55 (9th Cir.1990) (noting distinction between failure to exhaust and

procedural default in this context). As a result, respondent asks the court to decline considering the merits of petitioner's claims. Petitioner counters that the court should excuse his default for cause because various factors prevented him from properly exhausting his administrative remedies.

Even assuming petitioner's failure to exhaust his administrative remedies cannot be excused on the basis of cause and prejudice, this court nevertheless retains the discretion to waive a petitioner's procedural default. Because the exhaustion requirement is not jurisdictional in § 2241 cases, this court may "determine whether to excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court." *Brown,* 895 F.2d at 535. *Nigro* does not dictate a contrary result. In that case. the Ninth Circuit concluded that in the absence of a showing of cause and prejudice, the procedural default of administrative remedies "warrants dismissal" of a petition. 40 F.3d at 993; *see also Francis,* 894 F.2d at 355 n. 2. The court did not suggest, however, that dismissal is statutorily required or that a federal prisoner's procedural default of administrative remedies destroys jurisdiction.

Thus, this court retains the discretion to waive a petitioner's procedural default of administrative remedies absent a showing of cause and prejudice. The court elects to exercise its discretion, waive petitioner's procedural default and proceed to the merits of this case.

## II. *The Merits: Due Process*

■ When petitioner initially filed this action, he sought an order preventing his transfer and the restoration of both his telephone privileges and good time credits. Petitioner was subsequently moved to

FCI–Safford, and his telephone privileges and good time credits were restored. Motion to Dismiss (docket #12), p. 4. Petitioner nevertheless continues with this action to expunge the incident at issue from his prison record, claiming that his rights to due process have been violated.

Petitioner asserts that expungement is proper in this case because his conduct in using the telephone to contact Reyes–Espinosa at his residence is not prohibited by any prison rule or regulation. He further states that he never had any actual notice or knowledge that his phone call was prohibited in any way.

"It is clearly established, both by common sense and by precedent, that due process requires fair notice of what conduct is prohibited before a sanction can be imposed." *Newell v. Sauser*, 79 F.3d 115, 117 (9th Cir.1996). "[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Accordingly, petitioner's sanction was not appropriate if he was not given fair notice that calling a former inmate on supervised release was prohibited conduct.

Petitioner was ultimately adjudged to have violated Offense Code 497, which prohibits inmates from:

> Use of the telephone for abuses other than criminal activity (e.g., exceeding the 15–minute time limit for telephone calls; using the telephone in an unauthorized area; placing of an unauthorized individual on telephone list).

Respondent's Exhibit 10, p. 19.

This rule is a broad prohibition which defines itself by providing three examples of impermissible conduct. The examples of prohibited conduct are not intended to constitute an all-inclusive list of the abuses it covers. TRO Hearing Transcript, p. 27.

The DHO sought to bring petitioner's conduct under Offense Code 497's umbrella when he likened telephonic communication to written correspondence, noting that Program Statement 5265.11 provides a clear prohibition against written correspondence between inmates. His suggestion that petitioner should have inferred that such a prohibition would also apply to telephonic communication does not provide a prisoner with actual notice that his conduct is prohibited. There could be valid reasons to distinguish between written and spoken communications, and an inmate should not be left to guess when and where to draw such inferences.

Similarly, the DHO noted that in a March 3, 2000, prison newsletter, inmates were informed that they must not "convey or pass on any messages to another over the phone for any other inmate." Respondent's Exhibit 9, p. 4 & Exhibit 7, p. 3. It is far from clear whether this prohibition prevents an inmate from calling a former inmate who is on home confinement, especially if there is no intent to pass on a message on behalf of a third party. Accordingly, this prohibition did not provide petitioner with a reasonable basis to believe that his telephone call to Reyes–Espinosa was contrary to prison policy.

Finally, the DHO noted that a town hall meeting was held on February 2, 2000, for all inmates housed in Unit 2B. Although no records document petitioner's presence at this meeting, town hall meetings are mandatory for all inmates housed in a particular unit. Declaration of Michael Griffith ("Griffith Decl'n."), ¶ 8. Since petitioner had been housed in Unit 2B since November 2, 1999, *id*, the court presumes his presence at the meeting.

During the town hall meeting, a discussion took place pertaining to changes in

the telephone regulations. Griffith Decl'n., ¶ 8. Among the changes discussed at the meeting, and later posted on a bulletin board for several months, was the prohibition against using the telephone "to contact a volunteer, contract worker, staff member, or any former inmate who is in a halfway house or on supervised release." *Id;* Respondent's Exhibit 8. Accordingly, almost two years before his call to Reyes–Espinosa, petitioner was informed of this prohibition. This was sufficient to place petitioner on notice that contacting a former inmate who is in a halfway house or on supervised release by telephone was forbidden.

However, Reyes–Espinosa, a former inmate, was not at a halfway house or on supervised release when petitioner telephoned him. No explicit restriction bars telephone contact between inmates confined at different institutions or on home confinement; it only bars telephone contact with former inmates at a halfway house or on supervised release. The rule could easily have been written to prohibit all inmate-to-inmate telephone calls, but was not. Instead, the rule specifically refers only to inmates at a halfway house and on supervised release. Through its specificity, this rule leaves open the reasonable inference that a telephone call to an inmate under other conditions, such as while on home confinement, is not prohibited.

Although consisting of distinctly different locations, the BOP considers inmates in halfway house confinement and home confinement to be under the care and control of the Community Corrections Center. TRO Hearing Transcript, pp. 46–47. However, BOP did not communicate that information to petitioner.

Nonetheless, respondent argues that petitioner should have known that his telephone call to his friend was prohibited. When he added Reyes–Espinosa to his approved telephone list, he listed him as a friend, not as a former FCI–Sheridan inmate. Counselor Williams acknowledged that petitioner's request to add Reyes–Espinosa to his approved telephone list would have been denied if staff had been aware that he was still in custody. Respondent's Exhibit 7, p. 3. Thus, respondent deduces that petitioner knew his request to telephone Reyes–Espinosa would be denied if staff knew that he was a former FCI–Sheridan inmate and intentionally failed to disclose that information. Even if true, the issue is what the rules disallow, not what petitioner failed to disclose. In any event, it is not apparent that petitioner knew he was doing something wrong. Reyes–Espinosa was petitioner's friend on the FCI–Sheridan baseball team. *Id.* To describe him as such is not a misrepresentation. Furthermore, the record is not clear that petitioner knew Reyes–Espinosa was still in BOP custody. Besides, FCI–Sheridan staff should have known that Reyes–Espinosa was one of its former inmates and still in BOP custody.

Contrary to the DHO's conclusion, petitioner's denial of the charge is supported by respondent's own documents and witnesses. He was sanctioned for conduct that was not expressly prohibited and for which he could not have had and did not have notice. Because it was not reasonable to conclude that petitioner's telephone call to Reyes–Espinosa violated the broad language of Offense Code 497, the DHO's ultimate finding that petitioner violated Offense Code 497 infringed upon petitioner's right to due process of law.

## RECOMMENDATION

For the reasons identified above, the Petition for Writ of Habeas Corpus (docket # 1) and the Motion for Partial Summary Judgment (docket # 16), which the court construes as a memorandum sup-

porting the petition, should be GRANTED in part and DENIED in part. They should be granted to the extent that the disciplinary proceedings should be vacated and expunged from petitioner's records and otherwise denied.

### SCHEDULING ORDER

Objections to these Findings and Recommendation(s), if any, are due January 13, 2003. If no objections are filed, the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, the response is due no later than January 31, 2003. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

December 20, 2002.