**Bruce DUNBAR, Petitioner**

v.

**Carolyn A. SABOL, Respondent.**

**Civil Action No. 08–11628–WGY.**

United States District Court,
D. Massachusetts.

Sept. 1, 2009.

Eve A. Piemonte–Stacey, U.S. Attorney's Office, Boston, MA, for Respondent.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

## I. INTRODUCTION

Petitioner Bruce Dunbar ("Dunbar") is a federal prisoner at the Federal Prison Camp at Fort Devens in Ayer, Massachusetts. Memorandum and Order ("Mem. & Order") at 1 [Doc. No. 2]. Dunbar filed this action on September 24, 2008 as a motion for writ of mandamus challenging both the amount of restitution payments assessed by his unit manager at the prison, as well as the authority of the Bureau of Prisons to assess and withdraw an increased amount from his Inmate Trust Account without his input or consent. Petition for Writ of Habeas Corpus ("Petition") at 1 [Doc. No. 1]. Essentially, Dunbar is seeking to have the Inmate Financial Responsibility Program Review Worksheet declared unconstitutional. *Id.* at 4.

### A. Procedural Posture

As noted above, Dunbar initiated this action on September 24, 2008 as a writ of mandamus. *Id.* at 1. On November 1, 2008, this Court issued an Order stating that the action would be construed as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 since Dunbar appeared to be challenging the execution of his criminal sentence. Mem. & Order at 1–2 & n. 2.

On December 29, 2008, Respondent Carolyn A. Sabol ("Sabol")—Warden of the Federal Medical Center at Devens—filed this motion to dismiss Dunbar's petition for writ of habeas corpus. *See* Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus ("Resp't Mot. Dismiss") [Doc. No. 6]. Dunbar's response papers were filed on January 13, 2009. *See* Petitioner's Response to Respondent's Motion to Dismiss ("Pet'r Resp.") [Doc. No. 8]. On that same date, Dunbar also filed a motion to expedite this Court's decision on his habeas petition. *See* Petitioner's Motion for Expedited Decision ("Pet'r Mot. Expedited Decision") [Doc. No. 9]. On January 23, 2009, Dunbar then filed a motion for temporary restraining order to prevent any further funds from being withdrawn from his Inmate Trust Account. *See* Petitioner's Motion for Temporary Restraining Order ("Pet'r Mot. TRO") [Doc. No. 10]. This Court denied Dunbar's motion for temporary restraining order on January 27, 2009. Dunbar then filed a motion to reconsider on February 19, 2009, which this Court denied on February 24, 2009.

### B. Facts

In May 2000, Dunbar was convicted of conspiracy, bank fraud, and social security fraud. As such, on May 26, 2000, the Western District of Washington sentenced him to an eighteen-month term of imprisonment to be followed by a five-year term of supervised release. Additionally, Dunbar was ordered to pay restitution in the amount of $119,792.00, jointly and severally with four of his co-defendants.

On September 10, 2001, Dunbar was released from federal custody and so began his term of supervised release. After being released, however, Dunbar was charged with eleven violations of the terms of his supervised release—including unlawful possession of instruments of financial

fraud, forgery, unlawful issuance of checks, and possession of a dangerous weapon. As a result, Dunbar was sentenced to serve thirty-six months in prison. Further, the sentencing court restated Dunbar's obligation to pay restitution in the amount of $119,720.00

Dunbar was placed in the custody of the Federal Prison Camp at Fort Devens in Ayer, Massachusetts on August 9, 2007. On April 2, 2008, Dunbar signed a financial plan with the Inmate Financial Responsibility Program to pay $86.00 per month toward his outstanding financial obligations. At no point in time has Dunbar ever filed an administrative remedy challenging the implementation of the Inmate Financial Responsibility Program.

### C. Federal Jurisdiction

This Court may exercise subject-matter jurisdiction over Dunbar's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## II. ANALYSIS

Dunbar's primary contention is the legality of his unit manager's assessment of the amount of his monthly restitution payments. Petition at 4. In support of this argument, Dunbar correctly points out that a district court is not permitted to delegate to the Probation Department, or to the Bureau of Prisons, the responsibility of designating the timing and amount of restitution. *See United States v. Merric,* 166 F.3d 406, 409 (1st Cir.1999). This Court, however, has construed Dunbar's petition for writ of mandamus as a petition for writ of habeas corpus under § 2241. Therefore, Dunbar is subject to the exhaustion requirements imposed by the First Circuit. *See Sayyah v. Farquharson,* 382 F.3d 20, 24 (1st Cir.2004) ("[F]ederal inmates must exhaust their adminis-

trative remedies before filing a petition for habeas relief.").

As a general rule, the First Circuit has held that a federal prisoner is not permitted to challenge the execution of his or her sentence, and thus, may not seek habeas relief, until all available federal administrative remedies have been exhausted. *See id.; see also Rogers v. United States,* 180 F.3d 349, 357–58 (1st Cir.1999). As indicated by the Supreme Court, in order for a federal prisoner fully to exhaust such administrative remedies, he or she must abide by the "deadlines and other critical procedural rules" of the institution. *Woodford v. Ngo,* 548 U.S. 81, 88–93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).

At the Federal Prison Camp at Fort Devens, the policy of the Bureau of Prisons sets forth the administrative remedies that federal prisoners must first exhaust before petitioning for habeas relief. Resp't Mot. Dismiss at 4. This policy requires all federal inmates to abide by the following three-tier process: (1) attempt to informally resolve the matter with the appropriate federal official; (2) file a written request for administrative remedy to the Warden within twenty days of the event that triggered the inmate's complaint; and (3) file an appeal with the Regional Director of the Bureau of Prisons within twenty days of the date of the Warden's denial of the inmate's request for remedy. *Id.*

Both parties are in agreement that Dunbar has failed to file for any of the aforementioned administrative remedies in regards to the subject-matter of his petition. *See id.* at 3; Pet'r Resp. at 2. The parties part ways, however, with respect to the consequences that should follow as a result.

Dunbar correctly asserts that there are exceptions to the general re-

quirement that a federal prisoner exhaust all administrative remedies before petitioning for habeas relief. Specifically, the Second Circuit stated in *Carmona v. Bureau of Prisons* that the general exhaustion requirement need not be enforced where the petitioner can make a showing of "cause and prejudice." 243 F.3d 629, 630 (2d Cir.2001).

 Cause and prejudice can only be found where the "federal prisoner ... make[s] a showing of *cause* for his dereliction and consequent *prejudice* to him before his habeas petition may proceed."[1] *Id.* at 633 (emphasis added). Sufficient "cause" can be shown by demonstrating that there were "legitimate circumstances beyond the prisoner's control [which] preclude[d] him from fully pursuing his administrative remedies...." *Id.* at 634. If the petitioner makes a sufficient showing of "cause," he must then demonstrate "prejudice." This prong is satisfied where the petitioner can show that he or she suffered actual prejudice from the alleged violation of rights. *Davis v. United States* 411 U.S. 233, 243–45, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973).

In *Nigro v. Sullivan*, the petitioner failed to file for the appropriate administrative remedies before petitioning for habeas relief. 40 F.3d 990, 993 (9th Cir. 1994). The petitioner alleged that he failed to initiate any administrative remedies because the prison guards at his facility denied him access to the appropriate filing forms, as well as access to the prison law library. *Id.* at 997. In holding that the petitioner failed to show sufficient cause for defaulting on administrative rem-

edies, the Ninth Circuit stated that the prison guards' failure to provide the petitioner with access to the appropriate form had no effect on his ability properly to access administrative remedies. *Id.* The Ninth Circuit reasoned that the petitioner's " 'merely conclusory statement' " failed to demonstrate the necessary "cause and prejudice" to excuse his default. *Id.* (quoting *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir.1993)).

In the present case, Dunbar appears to make conclusory statements similar to those made by the petitioner in *Nigro*. As in *Nigro*, Dunbar makes a bald assertion that it would be "futil[e] to rely on the [administrative] process because it is [Sabol] that is unfairly applying th[e] formula 'worksheet.' " Pet'r Resp. at 2. Dunbar further alleges that filing for administrative remedies would place him at a "severe disadvantage" because of the potential for duress and undue force from Sabol with respect to her withdrawal of funds from his Inmate Trust Account. *Id.*

 As the Ninth Circuit held in *Nigro*, Dunbar's "merely conclusory statements" are insufficient to establish the requisite "cause and prejudice" needed to excuse his procedural default on administrative remedies. Dunbar has provided no allegations of *actual* threats or undue force from any federal official of the prison, nor has he explained how or why filing for administrative remedies would be futile. Dunbar's assertions are thus speculative at best.

Additionally, Sabol points out, and Dunbar concedes, that he has filed thirty-five administrative remedies on previous occasions—indicating that Dunbar is quite fa-

---

1. Though the "cause and prejudice" standard is predicated in part upon notions of comity with state courts, it has been extended to challenges of federal convictions. *Carmona*, 243 F.3d at 633. Though challenges to federal convictions do not implicate issues of feder-

alism, "the interests of finality, accuracy, integrity of prior proceedings, and judicial economy justify a district court's refusal to entertain a [habeas petition] ... absent a showing of cause and prejudice." *Id.*

miliar with the administrative process and its requirements. *See* Resp't Mot. Dismiss at 5; Pet'r Resp. at 6. Despite Dunbar's obvious familiarity with the administrative process, he alleges no specific instances where the administrative process has proven futile in the past.

Were Dunbar to file for administrative remedies, the need for judicial review potentially may be obviated. *See Carmona,* 243 F.3d at 634. Further, "the interests of judicial economy and accuracy are served by requiring that, absent a showing of cause and prejudice, appeals proceed in the first instance through the federal agency review process." *Id.* Since Dunbar as admittedly failed to exhaust his administrative remedies, and because his proffered reasons for failing to do so do not satisfy the "cause and prejudice" requirement, this action must be dismissed for "want of exhaustion." *Sayyah,* 382 F.3d at 28. Accordingly, Dunbar's petition for a writ of habeas corpus is DENIED.

## III. CONCLUSION

This Court hereby GRANTS Sabol's motion to dismiss Dunbar's petition for a writ of habeas corpus on the ground that Dunbar has failed properly to exhaust available administrative remedies and has failed to show the requisite "cause and prejudice" to excuse such default. Accordingly, Dunbar's petition for a writ of habeas corpus is DENIED.

SO ORDERED.